THE HONORABLE JAMES L. ROBART

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
IN SEATTLE**

MIDMOUNTAIN CONTRACTORS,
INC., a Washington corporation,

          Plaintiff,

    v.

AMERICAN SAFETY INDEMNITY
COMPANY, a foreign insurance company,
NATIONAL FIRE INSURANCE
COMPANY OF HARTFORD, a foreign
insurance company, NATIONAL UNION
FIRE INSURANCE COMPANY OF
PITTSBURGH, PA, a foreign insurance
company, and VIRGINIA SURETY
COMPANY, INC., a foreign insurance
company,

          Defendants.

No. 2:10-cv-01239 JLR

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
RE: INSURERS' FAILURE TO
INVESTIGATE

**NOTE ON MOTION CALENDAR:**
July 13, 2012

## I.    INTRODUCTION AND RELIEF REQUESTED

     In 1992, the Washington legislature adopted RCW 39.04.240.  That statute was

designed and written to encourage parties to public works contracts to evaluate their disputes

for settlement in the four months following the filing of suit, with the goal of bringing

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: INSURERS' FAILURE TO
INVESTIGATE - 1
**CASE #2:10-cv-01239 JLR**

HARPER | HAYES PLLC
ONE UNION SQUARE
600 UNIVERSITY STREET, SUITE 2420
SEATTLE, WASHINGTON 98101
TELEPHONE: 206-340-8010
FACSIMILE: 206-260-2852

efficient resolution to disputes involving public works contracts.[1]

In Washington, liability insurers owe a duty to conduct a thorough investigation of claims against their policyholders, to evaluate the settlement value of such claims, and to communicate their evaluations to their policyholders.[2]  The investigation of the claim and assessment of settlement value is critical to the preparation of a meaningful RCW 39.04.240 offer of settlement.  Therefore, when a public works dispute involves liability insurers, the insurers' duty to investigate is necessarily interwoven with the statutory offer of settlement procedure.

This is an insurance coverage lawsuit arising out of a public works dispute between MidMountain Contractors, Inc. and King County ("the Underlying Lawsuit").   In the Underlying Lawsuit, King County filed counterclaims alleging MidMountain (the general contractor) is liable for property damage to the Juanita Bay Pump Station ("the Project") arising out of the work of MidMountain's subcontractors.  The Defendants in this lawsuit issued commercial general liability policies to two of MidMountain's subcontractors— Johnson Western Gunite and Mattila Painting.  National Union Fire Insurance Company of Pittsburgh, PA ("NUFIC") and Virginia Surety Company each insured Johnson Western Gunite.   American Safety Indemnity Company ("ASIC") insured Mattila Painting. MidMountain tendered King County's counterclaims to Defendants as an Additional Insured on their policies, requesting all policy benefits.

---

[1]   *See*, *e.g.*, House Bill Report, ESB 6407, attached as Appendix A ("The purpose of the bill is to encourage settlements.").

[2]   *See* Washington Pattern Jury Instruction ("WPI") 320.05, attached as Appendix B.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: INSURERS' FAILURE TO
INVESTIGATE - 2
**CASE #2:10-cv-01239 JLR**

Harper | Hayes PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

The insurers' regulatory duties required Defendants to evaluate the strengths, weaknesses, and value of King County's claim against MidMountain and to communicate the results of such investigation to MidMountain.  MidMountain needed the results of those investigations to meaningfully prepare its RCW 39.04.240 offer of settlement to the County. This statute allows the prevailing party in a public works lawsuit to recover its attorney fees, but a party is only considered prevailing if it does better at trial than its offer of settlement. Therefore, it is critical that the offer is based on a thorough evaluation.  The statute required MidMountain to serve its offer no later than July 5, 2011.

No genuine issue of material fact exists; each of the defendant insurers in this case failed to investigate, evaluate, or communicate to their insured regarding King County's claims against MidMountain in the Underlying Lawsuit.  As of July 5, 2011—when MidMountain's offer of settlement was due—the undisputed facts show that Defendants had not conducted any evaluation of the strengths, weaknesses, and value of King County's claim against MidMountain, nor communicated any such investigation to MidMountain.  As a result, MidMountain incurred over $250,000 in legal expenses to perform this evaluation.[3] MidMountain accordingly brings this motion for partial summary judgment requesting a ruling that each defendant violated its duty of reasonable investigation as a matter of law, leaving for later adjudication the resulting damages suffered by Plaintiff.

## II.     STATEMENT OF RELEVANT FACTS

On April 1, 2011, King County filed a counterclaim against MidMountain alleging property damage at the Project arising out of the work of MidMountain's subcontractors,

---

[3]   *Docket No. 90* at 3 of 24, ¶ 7 ("By [June 30, 2011], MidMountain had incurred over $250,000 in defense costs.").

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: INSURERS' FAILURE TO
INVESTIGATE - 3
**CASE #2:10-cv-01239 JLR**

**HARPER | HAYES PLLC**
ONE UNION SQUARE
600 UNIVERSITY STREET, SUITE 2420
SEATTLE, WASHINGTON 98101
TELEPHONE: 206-340-8010
FACSIMILE: 206-260-2852

Johnson Western Gunite and Mattila Painting.[4]  On April 12, 2011, MidMountain tendered

the defense of the County's claim to ASIC, NUFIC, and Virginia Surety.[5]

A.      **ASIC'S RESPONSE TO MIDMOUNTAIN'S TENDER**

ASIC did not respond to MidMountain's tender until May 24, 2011.[6]  In its May 24

letter, ASIC reserved its rights to deny coverage and requested information from

MidMountain demonstrating that certain policy exclusions do *not* apply (despite it being the

insurer's burden to prove that policy exclusions *do* apply).[7]  The letter does not include any

analysis of the strengths or weaknesses of the County's claim against MidMountain.

Though claiming it had not yet "tak[en] a definitive position to deny coverage," ASIC did

not agree in its May 24, 2011 letter to retain defense counsel for MidMountain, nor did

ASIC in fact retain defense counsel.[8]

By letter dated June 30, 2011—a week after MidMountain filed a motion to amend

its complaint adding, among other things, claims for ASIC's breach of duty to defend—

ASIC offered for the first time to retain a defense lawyer for MidMountain, but only to

defend part of King County's counterclaim.[9]  The June 30 letter does not include any

analysis of the strengths, weaknesses, or value of the County's claim against MidMountain.

By the time MidMountain received that belated offer of a defense, it had already been forced

---

[4]   *Docket No. 79.*

[5]   *Declaration of Charles K. Davis in Support of Plaintiff's Motion for Partial Summary Judgment re: Insurers' Failure to Investigate ("Davis Decl."), Ex. A.*

[6]   *Davis Decl.*, ¶ 4; Ex. B.

[7]   *Davis Decl.*, Ex. B.

[8]   *See Davis Decl.*, Ex. B.

[9]   *Docket No. 71* at 3 of 4, ¶ 11; *Davis Decl.*, Ex. D.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: INSURERS' FAILURE TO
INVESTIGATE - 4
**CASE #2:10-cv-01239 JLR**

Harper | Hayes PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

1    to make other arrangements to investigate the County's claims at its own expense due to

2    ASIC's previous failure to do so.

3    **B.    NUFIC'S   RESPONSE   TO   MIDMOUNTAIN'S   TENDER   AND   ITS**
     **"REVOLVING DOOR" OF INSURANCE ADJUSTERS**

4

5            Claims administrator for NUFIC, Chartis Claims, Inc., responded to MidMountain's

     tender by letter dated May 4, 2011.[10]   However, Chartis responded only with respect to

6

7    excess policies issued by American International Specialty Lines Insurance Company

     ("AISLIC"), not the NUFIC policies.[11]   By letter dated May 19, 2011, Chartis informed

8

9    MidMountain that adjuster Jeffrey Ganzer would be handling the claim with respect to the

     NUFIC policies.[12]   The next contact by Chartis was a June 10, 2011 email from Claims

10

11   Assistant Renee Santi, stating the claim had been reassigned to adjuster Susan Hanlin.[13]   On

     June 15, 2011, Ms. Hanlin emailed MidMountain's counsel, asking for the date the project

12

13   was completed and the notice of completion and stating she was "in the process of reviewing

     our policies."[14]

14

15           Then by letter dated June 17, 2011, Jeffrey Ganzer of Chartis informed MidMountain

     that NUFIC would "conduct an investigation" and "provide MidMountain a defense subject

16

17   to a *reservation of rights*."[15]   NUFIC also informed MidMountain that the claim would

18   [10]   *Davis Decl.*, Ex. E.

19   [11]   *Davis Decl.*, Ex. E.   Although the May 4, 2011 letter listed a NUFIC general liability policy, Chartis
     corrected itself by letter dated May 19, 2011, stating that the inclusion of the general liability policy was
     error: "Please be advised that I am the adjuster assigned to handle claims arising under excess polic[ies] . .
20   . only. . . .  I apologize for having inadvertently referenced general liability policy number GL 4376323 in
     my previous letter to you dated May 4, 2011."  *Davis Decl.*, Ex. F.

21   [12]   *Davis Decl.*, Ex. F.

     [13]   *Davis Decl.*, Ex. G.
22
     [14]   *Davis Decl.*, Ex. H.

23   [15]   *Davis Decl.*, Ex. I (emphasis in original).

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: INSURERS' FAILURE TO
INVESTIGATE - 5
**CASE #2:10-cv-01239 JLR**

HARPER | HAYES PLLC
ONE UNION SQUARE
600 UNIVERSITY STREET, SUITE 2420
SEATTLE, WASHINGTON 98101
TELEPHONE: 206-340-8010
FACSIMILE: 206-260-2852

thereafter be handled by Judy Lee.[16]  Ms. Lee was the third claims handler assigned in four weeks, and the *fifth* since MidMountain tendered King County's pre-lawsuit claim to NUFIC in December 2010.[17]  On June 20, 2011, MidMountain responded to NUFIC, asking for clarification on who was actually handling the claim.[18]  The same day, Ms. Lee responded that she would be the adjuster, but did not have the claim file yet.[19]

In July 2011, NUFIC handed off MidMountain's claim to a *sixth* adjuster, Michael Bird,[20] and in August 2011, to a *seventh* adjuster, Brenda Blanton.[21]  NUFIC failed, however, to ever share the results of NUFIC's investigation (if any), and failed to ever share how it values King County's claims.

## C.   VIRGINIA SURETY'S RESPONSE TO MIDMOUNTAIN'S TENDER

Virginia Surety failed to respond to MidMountain's April 12, 2011 tender for five months,[22] despite multiple letters from MidMountain.[23]  In fact, Virginia Surety completely ignored the claim until after MidMountain served Virginia Surety with the Amended Complaint in this lawsuit in September 2011.[24]

---

[16]   *Davis Decl.*, Ex. I.

[17]   *Davis Decl.*, Ex. J.

[18]   *Davis Decl.*, Ex. J.

[19]   *Davis Decl.*, Ex. J.

[20]   *Davis Decl.*, Exs. L and M.

[21]   *Davis Decl.*, Exs. N and O.

[22]   *Davis Decl.*, Ex. P.

[23]   Following the April 12 tender, MidMountain sent letters to Virginia Surety dated May 19, 2011; June 10, 2011; June 21, 2011; June 27, 2011; July 1, 2011; and July 20, 2011.  *Davis Decl.*, Ex. Q.  Virginia Surety did not respond to any of these letters.  *Davis Decl.*, ¶ 18.

[24]   *Davis Decl.*, ¶ 18.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: INSURERS' FAILURE TO
INVESTIGATE - 6
**CASE #2:10-cv-01239 JLR**

Harper | Hayes pllc
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

1    **D.    MIDMOUNTAIN'S OFFER OF SETTLEMENT TO KING COUNTY**

2          Under Washington's Public Works Offer of Settlement statute, RCW 39.04.240,

3    MidMountain had 120 days from the filing and service of its complaint—or until July 5,

4    2011—to serve an offer of settlement upon King County.[25]  The purpose of this statute is to

5    encourage the early settlement of public works disputes[26] and, if the offer is rejected, to

6    provide the prevailing party with a mechanism to recover its attorney fees.[27]

7          Accordingly, on June 27, 2011, MidMountain's defense counsel requested the results

8    of the defendants' investigations to assist it in valuing King County's claim for the purpose

9    of making its offer of settlement:

10         > The time for an offer of judgment under the statute expires July 5, 2011.  It is
           > MMC's understanding that none of your companies have conducted an
11         > investigation into the appropriate dollar amount of an offer of judgment
           > should reasonably be made to the County on its counterclaim.  If MMC is
12         > incorrect in this regard, ***please immediately advise of your companies'
           > investigation, and the dollar amount your company has determined is an***
13         > ***appropriate offer of judgment to make to the County on its counterclaim.***[28]

14         No defendant responded to MidMountain's request, despite the insurers' obligation

15   to investigate and respond to communications.[29]  Therefore, MidMountain prepared and

16   served its offer of settlement to King County without the benefit of ASIC, NUFIC, or

---

17   [25]   RCW 39.04.240 ("(1) The provisions of RCW 4.84.250 through 4.84.280 shall apply to an action arising
           out of a public works contract in which the state or a municipality, or other public body that contracts for
18         public works, is a party, except that: (a) The maximum dollar limitation in RCW 4.84.250 shall not apply;
           and (b) in applying RCW 4.84.280, the time period for serving offers of settlement on the adverse party
19         shall be the period not less than thirty days and not more than one hundred twenty days after completion of
           the service and filing of the summons and complaint.").

20   [26]   House Bill Report, ESB 6407, attached as Appendix A ("The purpose of the bill is to encourage
           settlements.").

21   [27]   *See* RCW 4.84.250, applied to public works projects by RCW 39.04.240 without the maximum dollar
           limitation, ("[T]here shall be taxed and allowed to the prevailing party as a part of the costs of the action a
           reasonable amount to be fixed by the court as attorneys' fees.").

22   [28]   *Davis Decl.*, Ex. R (emphasis added).

23   [29]   *See* Washington Administrative Code ("WAC") 384-30-330(2), (3); 284-30-360(3); and 284-30-370.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: INSURERS' FAILURE TO
INVESTIGATE - 7
**CASE #2:10-cv-01239 JLR**

Virginia Surety's evaluation or investigation of the County's claim.[30]   King County rejected MidMountain's offer.[31]   MidMountain has subsequently incurred over $975,000 of additional defense expenses, only a part of which Virginia Surety and NUFIC have paid.[32] ASIC has paid nothing.

## E.   DISCOVERY

In response to discovery requests in this lawsuit, Defendants produced their claim files to MidMountain.[33]  No Defendant's claim file contains any investigation or analysis of the strengths, weaknesses, or value of the County's claim against MidMountain, let alone *any* mention or reference to MidMountain's request for Defendants' analyses regarding an appropriate offer of settlement under RCW 39.04.240.[34]

## III.   STATEMENT OF ISSUES

Whether Defendants breached their duties to investigate and communicate in violation of WAC 384-30-330(2) and (3), WAC 384-30-360(3), and WAC 284-30-370, and in breach of their contracts and common law duties when they (1) failed to evaluate the strengths, weaknesses, and value of the County's claim prior to the deadline to serve MidMountain's offer of settlement; and (2) failed to communicate the results of such investigation.

---

[30]   *Davis Decl.*, ¶ 20.

[31]   *Davis Decl.*, ¶ 20.

[32]   Of $975,937.15 total fees and costs invoiced, NUFIC and Virginia Surety have paid or reimbursed $346,634.78, leaving $629,302.37 unreimbursed.  *Davis Decl.*, ¶¶ 26-27; Exs. V and W.

[33]   *Davis Decl.*, Exs. S, T, and U.

[34]   *Davis Decl.*, ¶¶ 19 and 24; Exs. S, T, and U.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: INSURERS' FAILURE TO
INVESTIGATE - 8
**CASE #2:10-cv-01239 JLR**

Harper | Hayes PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

## IV.   EVIDENCE RELIED UPON

This motion is based on the pleadings and papers previously filed in this lawsuit together with the declaration of Charles K. Davis and exhibits thereto.

## V.   AUTHORITY

Summary judgment should be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[35]   While evidence must be construed in favor of the non-movant, summary judgment is nevertheless appropriate if no rational fact finder could decide for the nonmoving party.[36]   The nonmoving party cannot rest upon the mere allegations or denials of his or her pleadings, but must instead produce specific facts—by affidavit or other evidentiary materials allowed by Rule 56(e)—showing a genuine issue for trial.[37]

This Court should order that Defendants failed to investigate as a matter of law because Washington law requires a prompt investigation of the claims against the insured and Defendants' own claim files show no such investigations ever took place.

## A.   WASHINGTON LAW REQUIRED DEFENDANTS TO INVESTIGATE KING COUNTY'S CLAIM AGAINST MIDMOUNTAIN

Washington insurance regulations require insurers to investigate claims against their policyholders.   The WACs mandate, for example, that insurers "adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies."[38]   The WACs also require that "[e]very insurer must complete its investigation of a

---

[35]   *See* Fed. R. Civ. P. 56(c).

[36]   Maynard v. Ferno-Washington, Inc., 22 F. Supp. 2d 1171, 1180 (E.D. Wash. 1998).

[37]   *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

[38]   WAC 384-30-330(3).

HARPER | HAYES PLLC
ONE UNION SQUARE
600 UNIVERSITY STREET, SUITE 2420
SEATTLE, WASHINGTON 98101
TELEPHONE: 206-340-8010
FACSIMILE: 206-260-2852

claim within thirty days after notification of a claim, unless the investigation cannot reasonably be completed within that time."[39]   The WACs also mandate prompt communication:  "For all other pertinent communications from a claimant reasonably suggesting that a response is expected, an appropriate reply must be provided within ten working days . . . ."[40]   "Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies" constitutes an unfair method of competition and unfair or deceptive act or practice of the insurer.[41]   ***These WAC requirements are incorporated into every policy of insurance***.[42]

In addition to the WAC requirements, the duty of good faith—which "permeates the insurance arrangement" and "arises from a source akin to a fiduciary duty"[43]—requires insurers to conduct a reasonable investigation and evaluation of the claim against the insured.[44]  Further, the insurer must timely communicate its investigations and evaluations to the insured.[45]  These duties are spelled out in Washington Pattern Jury Instruction 320.05:

---

[39]   WAC 284-30-370.

[40]   WAC 284-30-360(3).

[41]   WAC 384-30-330(2).

[42]   *See* Britton v. Safeco Ins. Co., 104 Wash. 2d 518, 526, 707 P.2d 125 (1985) ("[A]n insurance regulatory statute becomes a part of the policy of insurance."); Touchette v. Nw. Mut. Ins. Co., 80 Wash. 2d 327, 332-33, 494 P.2d 479 (1972) ([R]egulatory statutes become a part of the policy of insurance.").

[43]   St. Paul Fire and Marine Ins. Co. v. Onvia, Inc., 165 Wash. 2d 122, 129, 196 P.3d 664 (2008).

[44]   Truck Ins. Exch. of Farmers Ins. Group v. Century Indem. Co., 76 Wash. App. 527, 534, 887 P.2d 455 (1995) ("The primary insurer has a duty to diligently investigate and evaluate the claim.").

[45]   Cardenas v. Navigators Ins. Co., C11-5578 RJB, 2011 WL 6300253 (W.D. Wash. Dec. 16, 2011) ("An insurer has a duty to act with reasonable promptness in investigation ***and communication*** with their insureds following notice of a claim and tender of defense.") (emphasis added); Moratti ex rel. Tarutis v. Farmers Ins. Co. of Washington, 162 Wash. App. 495, 506, 254 P.3d 939, 944 (2011) review denied, 173 Wash. 2d 1022, 272 P.3d 850 (2012) (approving jury instruction, which stated in relevant part:  "The duty of good faith requires the insurer to . . . [p]erform a reasonable investigation and evaluation of a claim against its insured . . . [and] ***[t]imely communicate its investigations and evaluations***, and any settlement offers ***to its insured***.") (emphasis added).

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: INSURERS' FAILURE TO
INVESTIGATE - 10
**CASE #2:10-cv-01239 JLR**

HARPER | HAYES PLLC
ONE UNION SQUARE
600 UNIVERSITY STREET, SUITE 2420
SEATTLE, WASHINGTON 98101
TELEPHONE: 206-340-8010
FACSIMILE: 206-260-2852

The duty of good faith requires an insurer to:

[(1) Perform a reasonable investigation and evaluation of a claim against its insured;]

. . . .

 [(4) Timely communicate its investigations and evaluations, and any settlement offers, to its insured . . . .[46]

The duty to investigate is fundamentally tied to the insurer's duty to attempt to settle: "In order for the insurer to make a good-faith decision not to settle within policy limits, it must have made a diligent effort to thoroughly investigate the facts upon which an intelligent and good-faith judgment may be predicated."[47]  "If investigation discloses a likelihood the insured is liable, the insurer has an affirmative duty to make a good faith effort to settle the case."[48]  But investigation cannot "disclose[] a likelihood the insured is liable" if the insurer never investigates.

**B.   DEFENDANTS FAILED TO INVESTIGATE AS A MATTER OF LAW**

Given that Washington law requires insurers to perform a prompt investigation and evaluation of the claim against the insured and communicate the results of that investigation and evaluation, this Court should rule as a matter of law that all three defendants failed in their contractual, regulatory, and common law duties to investigate.

Attached to the declaration of Charles K. Davis filed with this motion are all the Defendants' claim file entries and correspondence to MidMountain from tender of the

---

[46]   WPI 320.05, attached as Appendix B.  *See also* Onvia, 165 Wash. 2d at 132 ("[U]nder state law insurers have not only a general duty of good faith, RCW 48.01.030, but also a specific duty to act with reasonable promptness in investigation and communication with their insureds following notice of a claim and tender of defense.  These are necessarily obligations read into every policy.").

[47]   Weber v. Biddle, 4 Wash. App. 519, 521-22, 483 P.2d 155 (1971).

[48]   Truck Ins. Exch., 76 Wash. App. at 534.

Harper | Hayes pllc
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

County's counterclaim (April 12, 2011) until MidMountain served its offer of settlement on the County (July 5, 2011).[49]   This was precisely the time when MidMountain needed the results of the insurers' evaluations of the County's claim and specifically asked for those evaluations.

No claim file entry shows any evaluation of King County's claim.[50]   The absence of documentation is determinative—the WACs require insurers to create and keep claim files that "contain **all notes and work papers pertaining to the claim** in enough detail that pertinent events and dates of the events can be reconstructed."[51]   In other words, if the Defendants had conducted any evaluation of the strengths, weaknesses, or value of the County's claim against MidMountain, it would be in the claim file.   But it isn't.   The absence of any record of an investigation and evaluation is therefore evidence sufficient for summary judgment that no such investigation or evaluation took place.

Moreover, not one piece of correspondence from any of the defendants communicates the results of any such investigation or evaluation.[52]   And MidMountain specifically requested that information to help it prepare its offer of settlement.

Under RCW 39.04.240, MidMountain's offer of settlement had to be served on King County no later than July 5, 2011.[53]   The statute serves to both encourage the early

---

[49]   *Davis Decl.*, ¶ 25.

[50]   *Davis Decl.*, ¶ 24; Exs. S, T, and U.

[51]   WAC 284-30-340 (emphasis added).

[52]   *Davis Decl.*, ¶ 24.

[53]   *See* RCW 39.04.240 ("(1) The provisions of RCW 4.84.250 through 4.84.280 shall apply to an action arising out of a public works contract in which the state or a municipality, or other public body that contracts for public works, is a party, except that: (a) The maximum dollar limitation in RCW 4.84.250 shall not apply; and (b) in applying RCW 4.84.280, the time period for serving offers of settlement on the adverse party shall be the period not less than thirty days and not more than one hundred twenty days after completion of the service and filing of the summons and complaint.").

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: INSURERS' FAILURE TO
INVESTIGATE - 12
**CASE #2:10-cv-01239 JLR**

HARPER | HAYES PLLC
ONE UNION SQUARE
600 UNIVERSITY STREET, SUITE 2420
SEATTLE, WASHINGTON 98101
TELEPHONE: 206-340-8010
FACSIMILE: 206-260-2852

1   settlement of public works disputes and, if the offer is rejected, to provide the prevailing

2   party with a mechanism to recover its attorney fees.[54]

3          Therefore, it is critical that an RCW 39.04.240 offer be the result of a thorough

4   evaluation of the claim's strengths and weaknesses.  If the offer is too high, the offeror risks

5   paying more than the claim is worth in settlement; if the offer is too low, the offeror risks

6   losing the opportunity to recover its attorney fees.  To that end, MidMountain asked the

7   defendants to "advise of [the] companies' investigation, and the dollar amount [each]

8   company has determined is an appropriate offer of judgment to make to the County on its

9   counterclaim."[55]

10         Under WAC 284-30-360(3), Defendants had ten working days to reply.[56]  None did.

11  No evidence in this lawsuit shows that any Defendant investigated the County's claim,

12  evaluated its strengths and weaknesses, determined the value the claim, or communicated the

13  results of such investigation to MidMountain—leastwise not prior to the deadline to serve

14  the offer of settlement, which is when MidMountain needed that evaluation.  Because an

15  appropriate offer of settlement can either result in early resolution of the claim or provide

16  MidMountain with recovery of its attorney fees, it was in MidMountain's interest to serve

17  King County with an offer of settlement that was the product of a thorough evaluation.  By

18  not conducting that evaluation, the defendants failed to give MidMountain's interests equal

19  ─────────────────────
    [54]  *See* RCW 4.84.250, applied to public works projects by RCW 39.04.240 without the maximum dollar

20  limitation, ("[T]here shall be taxed and allowed to the prevailing party as a part of the costs of the action a
    reasonable amount to be fixed by the court as attorneys' fees."); *see also* House Bill Report, ESB 6407,
    attached as Appendix A ("The purpose of the bill is to encourage settlements.").

21  [55]  *Davis Decl.*, Ex. R .

22  [56]  WAC 284-30-360(3) ("For all other pertinent communications from a claimant reasonably suggesting that
    a response is expected, an appropriate reply must be provided within ten working days for individual
    insurance policies, or fifteen working days with respect to communications arising under group insurance

23  contracts.").

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: INSURERS' FAILURE TO
INVESTIGATE - 13
**CASE #2:10-cv-01239 JLR**

Harper | Hayes PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

1  consideration to their own.[57]

2  ## C.  DEFENDANTS FAILURE TO INVESTIGATE IS INDEPENDENT OF ANY DUTY TO DEFEND OR INDEMNIFY

3
4  All three defendants maintain that they did not breach their duties to defend or

   indemnify.[58]  ASIC, for example, maintains that its duty to defend never arose based on the
5
   allegations in the complaint and exclusions in its policy.[59]  And ASIC further argues that
6
7  even if it did owe a duty to defend, it offered MidMountain a defense.[60]  Even if ASIC were

   correct on both counts, that would not exonerate it (or any Defendant) of its failure to
8
   investigate.
9
   Defendants' failure to investigate the claim against MidMountain is a claims-
10
   handling violation independent of any duty to defend, settle, or indemnify:
11

12       [W]e hold that there is a cause of action for bad faith claims-handling in a
         third-party context, ***which is not dependent on whether the insurer has***
13       ***breached its duty to defend, settle, or indemnify***. . . .  Finally, we hold that
         ***the CPA recognizes a claim for violation of claims-handling regulations***
         ***that does not depend on a finding of bad faith or the existence of a duty to***
14       ***settle, indemnify, or defend.***[61]

15  Notwithstanding any other duty owed or breached by Defendants, they each owed

16  MidMountain regulatory, contractual, and common-law duties to investigate King County's

17  claim.  They each failed to conduct such an investigation by evaluating the claim prior to the

18  July 5, 2011 deadline for serving MidMountain's statutory offer of settlement, and they each

19  failed to communicate the results of such an investigation.

20  [57]  *See* <u>Onvia</u>, 165 Wash. 2d at 132 ("[A]n insurer must deal fairly with an insured, giving equal consideration *in all matters* to the insured's interests.").

21  [58]  *See Docket Nos. 53, 57, and 58.*

    [59]  *See, e.g.*, *Docket Nos. 91 and 101.*
22
    [60]  *Docket Nos. 91 and 101.*
23
    [61]  <u>Onvia</u>, 165 Wash. 2d at 135-36.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: INSURERS' FAILURE TO
INVESTIGATE - 14
**CASE #2:10-cv-01239 JLR**

Harper | Hayes PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

# VI.    CONCLUSION

Defendants never performed an investigation of King County's claim against MidMountain, evaluating the strengths, weaknesses, and value of the County's claim. Defendants also failed to communicate the results of such an investigation to MidMountain. RCW 39.04.240—a statute designed to encourage the early settlement of public works disputes—imposed a 120-day timeline for MidMountain to serve its offer of settlement on King County.  Therefore, it was critical that the insurers conducted their investigations prior to July 5, 2011.  All three Defendants failed to do so.  MidMountain therefore respectfully requests that this Court issue a partial summary judgment ruling that Defendants breached their duties to investigate and communicate in violation of WAC 384-30-330(2) and (3), WAC 384-30-360(3), and WAC 284-30-370, and in breach of their contracts and common law duties.

DATED this 21st day of June 2012.

HARPER | HAYES PLLC


By: s/Charles K Davis
     Gregory L. Harper, WSBA No. 27311
     Charles K. Davis, WSBA No. 38231
     Attorneys for Plaintiff

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: INSURERS' FAILURE TO
INVESTIGATE - 15
**CASE #2:10-cv-01239 JLR**

HARPER | HAYES PLLC
ONE UNION SQUARE
600 UNIVERSITY STREET, SUITE 2420
SEATTLE, WASHINGTON 98101
TELEPHONE: 206-340-8010
FACSIMILE: 206-260-2852

APPENDIX A

# HOUSE BILL REPORT
## ESB 6407
*As Passed Legislature*

**Title:**  An act relating to public works construction contracts.

**Brief Description:**  Providing for awards in construction contract actions.

**Sponsor(s):**  Senators Madsen, Anderson, Matson and Vognild.

**Brief History:**
Reported by House Committee on:
Commerce & Labor, February 28, 1992, DPA;
Passed House, March 5, 1992, 98-0;
Passed Legislature.

**HOUSE COMMITTEE ON
COMMERCE & LABOR**

**Majority Report:**  *Do pass as amended.*  Signed by 10 members: Representatives Heavey, Chair; G. Cole, Vice Chair; Lisk, Assistant Ranking Minority Member; Franklin; Jones; R. King; O'Brien; Prentice; Vance; and Wilson.

**Staff:**  Chris Cordes (786-7117).

**Background:**  In Washington, attorneys' fees are not awarded to the prevailing party in a law suit unless the award is specifically authorized by statute or contract, or is awarded on equitable grounds.  The "equitable grounds" exception is narrowly applied by the courts.

Washington statutes generally permit the award of the costs of a law suit and limited statutory attorneys' fees to the prevailing party.  In addition, various statutes throughout the code authorize the award of reasonable attorneys' fees in specific kinds of cases, including cases involving claims for damages of $10,000 or less and cases that are found to be frivolous and advanced without reasonable cause.  Other than these general statutes, there are no statutory provisions authorizing the award of attorneys' fees in law suits arising out of public works contracts.

**Summary of Bill:**  The statutory procedures for awarding attorneys' fees in actions for damages of $10,000 or less are made applicable to an action arising out of a public works contract in which a public body is a party.  In using these provisions, the maximum amount of the claim is $250,000, rather than $10,000, and the parties are required to serve offers of settlement not less than 30 days and not more than 120 days after serving and filing the complaint, rather than at least 10 days before trial.  The parties may not waive these rights, but the waiver prohibition is not to be construed as prohibiting the parties from mutually agreeing to a contract clause that requires submission of a dispute to arbitration.

**Fiscal Note:**  Available.

**Effective Date:**  Ninety days after adjournment of session in which bill is passed.

**Testimony For:**  The purpose of the bill is to encourage settlements.  If attorneys' fees and costs are awarded in an action, then a decision to pursue the law suit will be made on the merits of the case and not on the costs of going to court.  Public agencies seem to react to litigation as if their attorneys are free.  This discourages the pursuit of meritorious cases.  Amendments are acceptable that would give public agencies more discretion over making decisions about the lowest responsible bidder on a contract.

**Testimony Against:**  The bill creates incentives to sue the public

agencies because, under the bill, if the party recovers any amount at all, he or she will get attorneys' fees.  There is a problem with using these provisions if the funding is from a federal source.  A better solution for resolving small claims is mandatory arbitration.  A number of amendments are needed if the bill is to be workable.

***Witnesses:***  (In favor):  Dick Ducharme, Utility Contractors of Washington; and Duke Schaub, Associated General Contractors.  (Opposed):  Norman Anderson and Bill Boland, Department of Transportation.

APPENDIX B



**Washington State
Courts' Home**

Home   Search   Help   ©

# Welcome to the online source for the Washington Civil Jury Instructions

### 6A WAPRAC WPI 320.05
WPI 320.05 Insurer's Failure to Act in Good Faith—Failure to Investigate and Explore Settlement

6A Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 320.05 (6th ed.)

Washington Practice Series TM
Database updated May 2012

Washington Pattern Jury Instructions--Civil
Washington Supreme Court Committee On Jury Instructions

Part XV. Insurance Bad Faith
Chapter 320. Insurance Bad Faith Actions

**WPI 320.05 Insurer's Failure to Act in Good Faith—Failure to Investigate and Explore Settlement**

The duty of good faith requires an insurer to:
[(1) Perform a reasonable investigation and evaluation of a claim against its insured;]
[(2) If its investigation discloses a reasonable likelihood that its insured may be liable, make a good faith effort to settle the claim. This includes an obligation at least to conduct good faith settlement negotiations sufficient to ascertain the most favorable terms available and make an informed evaluation of the settlement demand;]
[(3) Evaluate settlement offers as though it bore the entire risk, including the risk of any judgment in excess of the policy limits;]
[(4) Timely communicate its investigations and evaluations, and any settlement offers, to its insured;] *[and]*
[(5) If the settlement demand exceeds the insurer's policy limits, communicate the offer to its insured, ascertain whether the insured is willing to make the necessary contribution to the settlement amount, and exercise good faith in deciding whether to pay its own limits.]
An insurer who fails to fulfill *[this duty] [any of these duties]* fails to act in good faith.

**Note on Use**

Use this instruction when an insured claims the insurer failed to use good faith efforts to explore settlement or settle within policy limits in a case in which the insured was exposed to an excess verdict.
The instruction should usually be incorporated at the end of WPI 320.02 (Insurer's Duty of Good Faith—General Duty), which more generally describes the insurer's duty. If not incorporated into WPI 320.02, the instruction above should begin with the statement that insurers have a duty of good faith when dealing with their insureds.

**Comment**

This instruction is based on the principles set forth in Truck Ins. Exch. v. Century Indem. Co., 76 Wn.App. 527, 887 P.2d 455 (1995), which summarized Washington law regarding bad faith failure to settle. See also Smith v. Safeco Ins. Co., 112 Wn.App. 645, 650–51, 50 P.3d 277 (2002) (slightly restating the *Truck Ins. Exchange* principles and adding factors to use with regard to breaches of duty).

The committee has restated these principles in order to more concisely and clearly state the applicable law for jurors. Also, the instruction has been rephrased in terms of "reasonableness," rather than "diligence," for consistency with other instructions in tort cases. See WPI Chapter 10, Negligence; see also WAC 284-30-330(4) (referring to "reasonable" investigations).

The duty to investigate and explore settlement arises out of the duty to defend, not the duty to pay indemnity. In *Truck Ins. Exchange*, Division I of the Court of Appeals held that a primary insurer could be held liable for a bad faith failure to settle a case on appeal. While an excess carrier has no direct cause of action for bad faith against the primary carrier, it is equitably subrogated to the rights of the insured.

Several cases have addressed this duty. Hamilton v. State Farm Ins. Co., 83 Wn.2d 787, 523 P.2d 193 (1974) (bad faith failure to settle within $10,000 limits when verdict was $45,000; the "no limit" jury instruction was approved, and the court held that the flat refusal to negotiate under circumstances where there is substantial exposure to liability and limited insurance can constitute bad faith); Burnham v. Commercial Cas. Ins. Co., 10 Wn.2d 624, 117 P.2d 644 (1941) (not bad faith to fail to settle within $5,000 policy limit where verdict was for $21,400; the court stated that insurer was not liable "in the absence of negligence or bad faith"); Tyler v. Grange Ins. Ass'n, 3 Wn.App. 167, 473 P.2d 193 (1970) (bad faith failure to settle auto claim within $10,000 policy limit where verdict was $29,087.40; the court held that the "no limit" standard should be adopted, and recognized the hybrid—negligence and bad faith—nature of an insurance bad faith cause of action).

The remedy for a bad faith failure to investigate and explore settlement is that the insurer will be held liable for any excess verdict plus interest. Safeco Ins. Co. v. Butler, 118 Wn.2d 383, 393, 823 P.2d 499 (1992); Besel v. Viking Ins. Co., 146 Wn.2d 730, 736–37, 49 P.3d 887 (2002); Greer v. Northwestern Nat'l Ins. Co., 109 Wn.2d 191, 203 n. 6, 743 P.2d 1244 (1987) (citing 40 A.L.R.2d 168 (1955)).
*[Current as of April 2004.]*

Westlaw. © 2012 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

6A WAPRAC WPI 320.05

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

---

**Westlaw, part of Thomson Reuters**
© 2012 West | Privacy | Accessibility

