1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON
                                AT SEATTLE
9

10   MIDMOUTAIN CONTRACTORS                CASE NO. C10-1239JLR
     INC.,
11                                         ORDER ON MOTIONS FOR
                    Plaintiff,             SUMMARY JUDGMENT
12
            v.
13
     AMERICAN SAFETY INDEMNITY
14   COMPANY, et al.,

15                 Defendants.

16                          I.     INTRODUCTION

17          This matter comes before the court on Plaintiff MidMountain Contractors, Inc.'s

18   ("MidMountain" or "MM") motion for partial summary judgment regarding Defendant

19   American Safety Indemnity Company's ("ASIC") duty to defend (MM Mot. (Dkt. # 70))

20   and ASIC's cross-motion for summary judgment (ASIC Mot. (Dkt. # 101)).  Having

21   considered the submissions of the parties, the balance of the record, and the relevant law,

22   and no party having requested oral argument, the court GRANTS in part and DENIES in

ORDER- 1

1  part MidMountain's motion for partial summary judgment regarding ASIC's duty to

2  defend (Dkt. # 70) and GRANTS in part and DENIES in part ASIC's cross-motion for

3  summary judgment (Dkt. # 101).  The court orders MidMountain and ASIC to file a joint

4  status report within 14 days of the date of this order identifying any claims remaining for

5  trial in light of the court's rulings herein.

6                              **II.     BACKGROUND**

7          This is an insurance coverage dispute.  MidMountain served as the general

8  contractor to King County for construction of a new wastewater conveyance pump station

9  in Kirkland, Washington, known as the Juanita Bay Pump Station ("the Project").   (Mills

10  Decl. (Dkt. # 90) ¶ 3.)  The general contract between King County and MidMountain

11  provided that MidMountain "shall be responsible for the acts and omissions of

12  Subcontractors."  (*Id.* Ex. C § 3.7(F).)

13          MidMountain subcontracted with Mattila Painting, Inc. ("Mattila") to supply and

14  install a Multi Component Bentonite ("MCB") waterproofing system around the exterior

15  of the pump station.  (*Id.* ¶ 3.)  The subcontract provided that Mattila would provide

16  insurance naming MidMountain and King County "as additional insureds for claims

17  arising out of subcontractor's work . . . ."  (*Id.* Ex. A ¶ R.)

18  **A. The Policies**

19          ASIC issued Mattila a series of Commercial General Liability ("CGL") insurance

20  policies with successive annual policy periods spanning August 1, 2005, to August 1,

21

22

ORDER- 2

2010 ("the Policies").[1]  (Fisher Decl. (Dkt. # 95) ¶ 2.)  The Policies include the following additional insured endorsement ("the Additional Insured Endorsement"):

> WHO IS AN INSURED (SECTION II) is amended to include as an insured the person or organization, trustee, estate or Governmental entity to whom or to which you are obligated, by virtue of a legally enforceable written contract . . . to provide insurance such as is afforded by this policy, but only with respect to operations performed by you or on your behalf or to facilities used by you . . . .
>
> Coverage under this Endorsement applies only as respects a legally enforceable written contract or permit with the Named Insured under this policy and only for liability arising out of or relating to the Names [sic] Insured's negligence.

(Fisher Decl. Ex. 1 at ASIC0108.)  Another endorsement to the Policies amended the Insuring Agreement to provide in relevant part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the Insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured or any Additional Insured against any "suit," "loss," "claim," "occurrence," or incident to which this insurance does not apply.
>
> * * * * *
>
> This insurance applies to "bodily injury" and "property damage" only if:
>
> (1)  The "bodily injury" and "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
>
> (2)  The "bodily injury" and "property damage" first manifests during the policy period. . . . .

---

[1] This order will cite to Policy No. 10 TSR-GL0769-00, effective for policy period August 1, 2006, through August 1, 2007, which both parties have submitted to the court.  (*See* Fisher Decl. (Dkt. # 95) Ex. 1; Harper Decl. (Dkt. # 71) Ex. A.)  The parties agree that this policy is materially identical to the other policies for the purposes of these motions.  (*See* Fisher Decl. ¶ 2; Harper Decl. ¶ 2.)

ORDER- 3

(*Id.* Ex. 1 at ASIC0091-92.)  "Property damage" is defined to mean "[p]hysical injury to

tangible property, including all resulting loss of use of that property."  (*Id.* Ex. 1 at

ASIC0081.)  "Occurrence" is defined to mean "an accident."  (*Id.*)  "Suit" is defined to

mean "a civil proceeding in which damages because of 'bodily injury,' [or] 'property

damage' . . . to which this insurance applies are alleged.  'Suit' includes . . . [a]ny other

alternative dispute resolution proceeding in which such damages are claimed and to

which the insured submits with our consent."  (*Id.*)

   The Policies exclude "property damage" to "[t]hat particular part of real property

on which you or any contractors or subcontractors working directly or indirectly on your

behalf are performing operations, if the 'property damage' arises out of those operations"

("Exclusion j(5)"), as well as "property damage" to "[t]hat particular part of any property

that must be restored, repaired or replaced because 'your work' was incorrectly

performed on it" ("Exclusion j(6)").  (*Id.* Ex. 1 at ASIC0073.)  Exclusion j(6), however,

"does not apply to 'property damage' included in the 'products-completed operations

hazard.'"  (*Id.*)  The "products-completed operations hazard" ("PCOH") "[i]ncludes all

'bodily injury' and 'property damage' occurring away from premises you own or rent and

arising out of 'your product' or 'your work' except: . . . Work that has not yet been

completed or abandoned. . . ."[2]  (*Id.* Ex. 1 at ASIC0081.)  The Policies were also

endorsed to exclude cross-claims or suits:  "This insurance does not apply to:  Any claim

---

[2] A separate exclusion provides that "[This insurance does not apply to] 'property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'"  (Fisher Decl. Ex. 1 at ASIC0073.)

ORDER- 4

1  or 'suit' for damages by any Insured against another Insured.  All other terms, conditions

2  and exclusions under the policy are applicable to this Endorsement and remain

3  unchanged" ("Cross-Claim Exclusion").  (*Id.* Ex. 1 at ASIC0090.)

4    Among the duties placed on insureds under the Policies is the duty to "[c]ooperate

5  with us in the Investigation or settlement of the claim or defense against the 'suit.'"  (*Id.*

6  Ex. 1 at ASIC0078.)  The Policies further provide, "No insured will, except at that

7  Insured's own cost, voluntarily make a payment, assume any obligation, or incur any

8  expense . . . without our consent."  (*Id.*)

9  **B. The Underlying Dispute**

10    On April 19, 2010, King County sent a letter to MidMountain alleging that

11  MidMountain and its subcontractors performed defective work.  (Mills Decl. Ex. B.)

12  MidMountain tendered King County's allegations and claims to ASIC, among other

13  insurers.  (*Id.*)  Upon receipt of MidMountain's tender, ASIC contacted Mattila and its

14  agent to obtain information.  (Fisher Decl. ¶ 4.)

15    On July 2, 2010, MidMountain initiated the instant declaratory judgment action

16  against its insurer, National Fire Insurance Company of Hartford ("National Fire"), and

17  ASIC in the King County Superior Court for the State of Washington.  (Compl. (Dkt. #

18  1).)  ASIC timely removed the action to this court.  (Not. of Removal (Dkt. # 1).)  ASIC

19  then moved to stay this proceeding because MidMountain's lawsuit was premature.  (Dkt.

20  # 12.)  The court agreed and stayed the proceedings for seven months.  (Dkt. ## 14, 17.)

21    While the insurance coverage action was stayed, the parties proceeded with the

22  underlying dispute.  On July 29, 2010, ASIC sent a letter to MidMountain acknowledging

1   receipt of the May 5, 2012 tender and reserving all rights under the terms and conditions

2   of the policies issued to Mattila.  (Fisher Decl. Ex. 3.)  Among other things, ASIC stated

3   its position that no "suit" had been filed that would trigger any duty to defend or

4   indemnify.  (*Id.* Ex. 3 at ASIC2270.)  ASIC also asked to be apprised of any significant

5   developments and notified of any mediation.  (*Id.* Ex. 3 at ASIC2274.)

6          On February 16, 2011, MidMountain and King County mediated their dispute.

7   (Fisher Decl. ¶ 6.)  National Fire represented MidMountain at the mediation, which ASIC

8   also attended.  (*Id.*)  The mediation was unsuccessful.  (*Id.*)

9          On March 4, 2011, MidMountain filed suit against King County, Mattila, and

10  subcontractor Johnson Western Genuite Co. ("JWG") in the King County Superior Court

11  for the State of Washington ("the Underlying Action").  (Harper Decl. (Dkt. # 71) Ex. E.)

12  MidMountain brought claims for breach of contract, warranty, indemnity and defense,

13  and duty to procure insurance against the defendants, as well as a claim for default on

14  contract against Mattila.  (*Id.*)  MidMountain's complaint included the allegation that

15  "[n]ear the end of Mattila's work on the project, but before Mattila completed its

16  contractual obligations, Mattila refused to complete its work and walked off the Project in

17  breach of its contractual obligations . . . ."  (*Id.* Ex. E ¶ 2.24.)

18         King County answered MidMountain's complaint ("the Answer") and

19  counterclaimed ("the Counterclaim"), alleging that MidMountain was liable for property

20  damage arising out of the subcontractors' work.  (Harper Decl. Ex. F.)  In its Answer,

21  King County admitted that "the MCB installation by Mattila was defective and has led to

22  water entry and resulting property damage to completed components other than Mattila's

own work." (*Id.* Ex. F ¶ 2.25.)  The Counterclaim alleged that "Mattila's waterproofing

installation was determined to have been faulty causing the product to fail in its essential

purpose . . . ." (*Id.* Ex. F ¶ 10.7.)  Additionally, the Counterclaim alleged that

"[w]aterproofing-related damages were caused by MidMountain's acts and omissions"

and that "[d]ue to the negligent waterproofing work, King County has incurred and will

incur costs for repair and mitigation . . . ." (*Id.* Ex. F. ¶ 10.12.)

On April 12, 2011, MidMountain tendered the Counterclaim to ASIC.  (*Id.* Ex. G.)

On May 19, 2011, MidMountain wrote to ASIC, claiming that ASIC had violated various

regulatory provisions governing insurers and was in breach of its duty to defend.  (*Id.* Ex.

H.)  On May 24, 2011, ASIC sent a letter to MidMountain responding to MidMountain's

tender of the Counterclaim, reserving its rights, and asking for more information.  (*Id.* Ex.

I.)  By letter dated June 3, 2011, MidMountain responded to ASIC's May 24, 2011 letter

and accused ASIC of having breached its duty to defend under Washington law by failing

to either accept or deny coverage.  (Fisher Decl. Ex. 6.)  On June 30, 2011, ASIC sent a

letter to MidMountain agreeing to retain counsel to defend MidMountain subject to a

reservation of rights.  (*Id.* Ex. 7.)  MidMountain rejected ASIC's offer of defense and

refused ASIC's retained counsel.  (Fisher Decl. Ex. 8.)  ASIC responded that it remained

ready to defend MidMountain.  (Duany Decl. (Dkt. # 93) Ex. 7.)

On June 23, 2011, after the stay in this case was lifted, MidMountain moved the

court for leave to file an amended complaint that, among other things, contained

additional claims against ASIC.  (Dkt. # 23.)  The court granted the motion.  (Dkt. # 40.)

MidMountain's amended complaint seeks declaratory relief that:  (1) MidMountain is

1  excused from complying with any of the conditions imposed by the Policies because of

2  ASIC's acts, omissions, and breaches; (2) ASIC's failure to respond to MidMountain's

3  tender letter was unreasonable, frivolous, or unfounded; (3) ASIC's failure to defend or

4  indemnify MidMountain with respect to the Counterclaim is unreasonable, frivolous, or

5  unfounded; (4) ASIC has forfeited all rights of contribution and subrogation; (5) ASIC is

6  estopped from denying coverage for any settlement, judgment, or award entered into or

7  assessed against MidMountain; and (6) ASIC is not entitled to allocation between the

8  defense of covered and non-covered claims.  (Am. Compl. (Dkt. # 42) ¶ 68.)

9  MidMountain further claimed that ASIC breached its duty to defend under the Policies,

10  as well as its statutory, regulatory, and common law duties to MidMountain.  (*Id.* ¶¶ 70-

11  80.)  MidMountain also brought claims for breach of the duty of good faith and fair

12  dealing (*id.* ¶¶ 81-84), violation of the Washington Consumer Protection Act, RCW ch.

13  19.86 (*id.* ¶¶ 85-88), and violation of the Washington Insurance Fair Conduct Act, RCW

14  ch. 48.30 (*id.* ¶¶ 89-90).

15  **III.    ANALYSIS**

16  **A. Summary Judgment Standard**

17      Summary judgment is appropriate if the evidence, when viewed in the light most

18  favorable to the non-moving party, demonstrates "that there is no genuine dispute as to

19  any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

20  P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of*

21  *L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of

22  showing there is no genuine issue of material fact and that he or she is entitled to prevail

ORDER- 8

1    as a matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party meets his or her

2    burden, then the non-moving party "must make a showing sufficient to establish a

3    genuine dispute of material fact regarding the existence of the essential elements of his

4    case that he must prove at trial" in order to withstand summary judgment.  *Galen*, 477

5    F.3d at 658.  The court is "required to view the facts and draw reasonable inferences in

6    the light most favorable to the [non-moving] party."  *Scott v. Harris*, 550 U.S. 372, 378

7    (2007).  Where cross-motions for summary judgment are at issue, the court "evaluate[s]

8    each motion separately, giving the nonmoving party in each instance the benefit of all

9    reasonable inferences."  *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th

10   Cir. 2006) (citations omitted); *see also Friends of Columbia Gorge, Inc. v. Schafer*, 624

11   F. Supp. 2d 1253, 1263 (D. Or. 2008).

12   **B. Washington Insurance Law**

13        Washington courts have long held that the duty to defend under an insurance

14   contract is different from and broader than the duty to indemnify.  *Am. Best Food, Inc. v.*

15   *Alea London, LTD*, 229 P.3d 693, 696 (Wash. 2010) (citing *Safeco Ins. Co. of Am. v.*

16   *Butler*, 823 P.2d 499, 504-05 (Wash. 1992)).  "The duty to defend arises when a

17   complaint against the insured, construed liberally, alleges facts which could, if proven,

18   impose liability upon the insured within the policy's coverage."  *Truck Ins. Exch. v.*

19   *VanPort Homes, Inc.*, 58 P.3d 276, 281-82 (Wash. 2002) (internal quotation omitted).

20   "When the facts or the law affecting coverage is disputed, the insurer may defend under a

21   reservation of rights until coverage is settled in a declaratory action."  *Am. Best Food*,

22   229 P.3d at 696 (citing *Truck Ins.*, 58 P.3d at 282).  "[A]n insurer must defend until it is

1    clear that the claim is not covered." *Nat'l Sur. Corp. v. Immunex Corp.*, 256 P.3d 439,

2    445 (Wash. Ct. App. 2011).  The duty to indemnify, by contrast, exists only if the policy

3    actually covers the insured's liability.  *Am. Best Food*, 229 P.3d at 696.

4            The criteria for interpreting insurance policies in Washington are well settled.

5    Courts construe insurance policies as contracts.  *Weyerhaeuser Co. v. Commercial Union*

6    *Ins. Co.*, 15 P.3d 115, 122 (Wash. 2000).  Courts consider the policy as a whole and give

7    it a "fair, reasonable, and sensible construction as would be given to the contract by the

8    average person purchasing insurance."  *Id.* (quoting *Am. Nat'l Fire Ins. Co. v. B & L*

9    *Trucking & Const. Co.*, 951 P.2d 250, 256 (Wash. 1998)).  If the policy language is clear

10   and unambiguous, courts must enforce it as written and may not modify it or create

11   ambiguity where none exists.  *Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 737

12   (Wash. 2005).  A clause is only considered ambiguous if it is susceptible to two or more

13   reasonable interpretations.  *Id.*  If an ambiguity exists, the clause is construed in favor of

14   the insured.  *Id.*

**C.  MidMountain's Motion for Partial Summary Judgment Regarding Duty to
     Defend**

16

17           MidMountain seeks a summary judgment ruling that ASIC owed it a duty to

18   defend and that ASIC breached that duty as of May 24, 2011.  (*See generally* MM Mot.)

19   For the reasons explained below, the court concludes that King County's Counterclaim

20   triggered ASIC's duty to defend as a matter of law, but that MidMountain has failed in its

21   burden of establishing that ASIC breached that duty.  The court therefore grants in part

22   and denies in part MidMountain's motion for partial summary judgment.

### 1.  Duty to Defend

The Washington Supreme Court recently summarized an insurer's duty to defend as follows:

> The duty to defend is triggered if the insurance policy conceivably covers allegations in the complaint.  The duty to defend arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage.  An insurer may not put its own interests ahead of its insured's.  To that end, it must defend until it is clear that the claim is not covered. . . .
>
> The insurer is entitled to investigate the facts and dispute the insured's interpretation of the law, but if there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend. When the facts or the law affecting coverage is disputed, the insurer may defend under a reservation of rights until coverage is settled in a declaratory action.  Once the duty to defend attaches, insurers may not desert policyholders and allow them to incur substantial legal costs while waiting for an indemnity determination.

*Am. Best Food*, 229 P.3d at 696 (citation and quotation omitted).  "[T]o determine whether the duty to defend exists, [the] court examines the policy's insuring provisions to see if the complaint's allegations are conceivably covered.  If covered, [the] court must then determine whether any exclusion clearly and unambiguously applies to bar coverage."  *Hayden v. Mut. of Enumclaw Ins. Co.*, 1 P.3d 1167, 1172 (Wash. 2000).

The Policies state in relevant part:  "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.  We will have the right and duty to defend the Insured against any 'suit' seeking those damages."  (Fisher Decl. Ex. 1 at ASIC0091.)  Under the Additional Insured Endorsement, an "insured" includes "the person or organization, trustee, estate or Governmental entity with whom or to which you are

1   obligated, by virtue of a legally enforceable written contract . . . to provide insurance

2   such as is afforded by this policy . . . ."  (*Id.* at ASIC0108.)  "Coverage under this

3   Endorsement applies only . . . for liability arising out of or relating to the Names [sic]

4   Insured's negligence."  (*Id.*)  The ASIC Policies provide that the term "property damage"

5   means "physical injury to tangible property," and the term "occurrence" means an

6   "accident."  (*Id.* at ASIC0081.)  The term "suit" means "a civil proceeding in which

7   damages because of . . . 'property damage' . . . to which this insurance applies are

8   alleged," including "[a]ny other alternative dispute resolution proceeding in which such

9   damages are claimed and to which the insured submits with our consent."  (*Id.*)

10        Here, the Policies conceivably cover the allegations in the Counterclaim.

11   MidMountain qualifies as an "insured" within the meaning of the Additional Insured

12   Endorsement because it had a legally enforceable contract with Mattila that provided for

13   insurance coverage, and the Counterclaim alleges facts that could result in MidMountain

14   being liable for Mattila's negligence.  (*See* Harper Decl. Ex. F (Counterclaim) ¶¶ 10.7

15   ("Mattila's waterproofing installation was determined to have been faulty causing the

16   product to fail in its essential purpose . . . ."), 10.12 ("Due to the negligent waterproofing

17   work, King County has incurred and will incur costs for repair and mitigation to the

18   Pump Station building and equipment.").)  These same allegations also established that

19   King County claimed physical injury to tangible property (i.e. "property damage") that

20   was the result of an accident (i.e. "occurrence").  *See Dewitt Constr. Inc. v. Charter Oak*

21   *Fire Ins. Co.*, 307 F.3d 1127, 1133 (9th Cir. 2002) (holding that under Washington law,

22   an "occurrence," defined in part as "accident," included a subcontractor's negligent

1    construction).  Additionally, although the Counterclaim is silent as to when the property

2    damage manifested, ASIC had previously received information from MidMountain

3    indicating that the property damage was apparent by May 8, 2009, which was within the

4    covered period.  (*See* Harper Decl. Ex. B at 4.)  For these reasons, the court concludes

5    that, as a matter of law, the allegations in the Counterclaim are conceivably covered by

6    the Policies.

7           Next, the court must determine whether any exclusion "clearly and

8    unambiguously" bars coverage.  *Hayden*, 1 P.3d at 1172.  MidMountain contends that

9    none of the Policies' exclusions unequivocally apply to King County's counterclaims.

10   (MM Mot. at 19-20.)  ASIC, however, argues that Exclusions j(5) and j(6), as well as the

11   Cross-Claim Exclusion, apply to bar coverage.  (Resp. to MM Mot. (Dkt. # 91) at 19-22.)

12   The court will address each exclusion in turn, bearing in mind that exclusions are strictly

13   construed against the insurer because they are contrary to the protective purpose of

14   insurance.  *See Diamaco, Inc. v. Aetna Cas. & Sur. Co.*, 983 P.2d 707, 711 (Wash. Ct.

15   App. 1999).  For the reasons explained below, the court concludes that none of the

16   applicable exclusions bar coverage based on the allegations in the Counterclaim.  As

17   such, the Counterclaim triggered ASIC's duty to defend as a matter of law.

18                   **a.  Exclusion j(5)**

19          Exclusion j(5) provides that there is no coverage for "Property Damage" to "[t]hat

20   particular part of real property on which you or any contractors or subcontractors

21   working directly or indirectly on your behalf are performing operations, if the 'property

22   damage' arises out of those operations."  (Fisher Decl. Ex. 1 at ASIC0073.)  This

1   exclusion applies only to damage that occurred at the time Mattila was performing

2   operations. *Dewitt Constr.*, 307 F.3d at 1135 (applying Washington law to policy

3   language identical, in relevant part, to that of Exclusion j(5)); *Canal Indem. Co. v. Adair*

4   *Homes, Inc.* ("*Canal I*"), 737 F. Supp. 2d 1294, 1301 (W.D. Wash. 2010), *aff'd* 445 Fed.

5   Appx. 938 (9th Cir. 2011) (concluding that exclusion identical to Exclusion j(5) "bars

6   coverage for damages occurring during [the insured's] construction of the home"); *Mid-*

7   *Continent Cas. Co. v. Tital Constr. Corp.*, No. 05-CV-1240 MJP, 2009 WL 1587215, at

8   *3 (W.D. Wash. Jun. 5, 2009), *aff'd* 440 Fed. Appx. 547 (9th Cir. 2011) (same); *see also*

9   *Vandivort Constr. Co. v. Seattle Tennis Club*, 522 P.2d 198, 201 (Wash. Ct. App. 1974)

10  (holding that exclusion similar to Exclusion j(5) applied to damages occurring while

11  insured was performing operations on the property).  Here, there is no allegation in the

12  Counterclaim regarding whether Mattila was performing operations at the time the

13  property damage occurred.  Therefore, Exclusion j(5) does not clearly and

14  unambiguously bar coverage.

15         ASIC relies on *Canal Indemnity Co. v. Adair Homes, Inc.* ("*Canal II*"), 445 Fed.

16  Appx. 938 (9th Cir. 2011) (unpublished), and *Harrison Plumbing & Heating, Inc. v. New*

17  *Hampshire Insurance Group*, 681 P.2d 875 (Wash. Ct. App. 1984), to argue that

18  Exclusion j(5) applies to operations during construction, as well as to direct damages

19  stemming from the alleged defective construction, regardless of when those damages

20  occurred.  (Resp. to MM Mot. at 20-22.)  Neither case changes the court's conclusion.

21  First, as an unpublished disposition or order, *Canal II* is not binding on the court.  *See*

22  Ninth Cir. R. 36-3(a).  The trial court order that *Canal II* affirmed, however, supports the

ORDER- 14

1    court's conclusion that Exclusion j(5) applies only to property damages occurring during

2    construction.  *See Canal I*, 737 F. Supp. 2d at 1301-02 ("[T]he plain and unambiguous

3    language of the ongoing operations exclusion bars coverage for the Pearsons' property

4    damages occurring during construction of the residence.").  Second, *Harrison Plumbing*

5    does not assist the court in interpreting the scope of Exclusion j(5) because it involved a

6    differently worded exclusion.  *See Harrison Plumbing*, 681 P.2d at 878-79 (construing

7    policy that excluded "property damage . . . to . . . that particular part of any property, not

8    on premises owned by or rented to the insured, . . . the restoration, repair or replacement

9    of which has been made or is necessary by reason of faulty workmanship thereon by or

10   on behalf of the insured . . .") (alterations in original).  Accordingly, the court concludes

11   that, based on the allegations in the Counterclaim, Exclusion j(5) does not bar coverage.

### b.  Exclusion j(6)

13        Exclusion j(6) provides that there is no coverage for "Property Damage" to "[t]hat

14   particular part of any property that must be restored, repaired or replaced because 'your

15   work' was incorrectly performed on it."  (Fisher Decl. Ex. 1 at ASIC0073.)  Exclusion

16   j(6), however, "does not apply to 'property damage' included in the 'products-completed

17   operations hazard.'"  (*Id.*)  In other words, Exclusion j(6) is itself subject to an exception

18   for damages included in the PCOH.  If damages fall within the PCOH, then Exclusion

19   j(6) does not apply.  The PCOH includes in relevant part "all . . . 'property damage'

20   occurring away from premises you own or rent and arising out of 'your product' or 'your

21   work' except:  (1) Products that are still within your physical possession; or (2) Work that

22   has not yet been completed or abandoned."  (*Id.* at ASIC0081.)  The PCOH, therefore, is

ORDER- 15

1    subject to its own exceptions.  For the sake of clarity, the court provides the following

2    summary of the exceptions relevant to Exclusion j(6).  First, if Exclusion j(6) applies,

3    then MidMountain is not entitled to coverage.  If, however, the PCOH applies, then

4    Exclusion j(6) does not apply.  Nevertheless, if the damage at issue occurred while

5    Mattila's work was still ongoing, then the PCOH does not apply, Exclusion j(6) does

6    apply, and MidMountain is not entitled to coverage.  *See Mid-Continent*, 2009 WL

7    1587215, at *4 (interpreting identical policy language).

8        ASIC argues that because the Counterclaim alleged that Mattila never completed

9    its work on the Project, the PCOH does not apply and Exclusion j(6) clearly and

10   unambiguously applied to bar coverage.  (*See* Resp. to MM Mot. at 21-22.)  To come to

11   this conclusion, ASIC asserts that Mattila did not "abandon" the work within the meaning

12   of the exclusion to the PCOH.  (*Id.*)  ASIC relies on *Claredon American Insurance Co. v.*

13   *General Security Indemnity Co. of Arizona*, 193 Cal. App. 4th 1311 (Cal. Ct. App. 2011),

14   a case in which the court interpreted a PCOH provision identical to the one at issue here.

15   (Resp. to MM Mot. at 21-22.)  In *Claredon*, a homeowner hired a contractor to build a

16   residence but fired the contractor before the home had been completed.  193 Cal. App.

17   4th at 1314.  The court concluded that the project had not been abandoned within the

18   meaning of the PCOH in the contractor's CGL policy.  *Id.* at 1319.  In coming to this

19   conclusion, the court construed the term "abandoned" as requiring that "both sides to

20   [the] contract expressly announce their intention to abandon it, releasing both sides from

21   their respective duties under the contract."  *Id.*  Applying the construction of "abandon"

22   articulated by the *Claredon* court, ASIC contends that there was no mutual intent here

ORDER- 16

1   because MidMountain and Mattila filed claims against one another for breach of contract,

2   thereby demonstrating a mutual intent to enforce their contract.  (Resp. to MM Mot. at

3   21.)

4         The court declines to follow *Claredon* here.  Under Washington law, the court

5   must give the Policies a "fair, reasonable, and sensible construction as would be given to

6   the contract by the average person purchasing insurance."  *Weyerhaeuser*, 15 P.3d at 122

7   (quoting *Am. Nat'l Fire Ins.*, 951 P.2d at 256).  When a clause is susceptible to two or

8   more reasonable interpretations, the clause is considered ambiguous and it is construed in

9   favor of the insured.  *Id.*  The term "abandon" is not defined in the ASIC Policies, and it

10  is susceptible to at least two reasonable interpretations when read in context.  "The term

11  could, for example, be read as requiring only that the insured have 'abandoned' its work,

12  or as requiring that all parties to the construction contract have 'abandoned' the project."

13  *Thomas v. Nautilus Ins. Co.*, No. CV 11-40-M-DWM-JCL, 2011 WL 4369519, at *10

14  (D. Mont. Aug. 24, 2011) (construing a PCOH clause identical to the one at issue here).[3]

15  Because the term "abandon" is ambiguous, the court construes it in MidMountain's favor

16  to require only that the insured "abandon" its work.  *See Weyerhaeuser*, 15 P.3d at 122.

17  In light of this construction, the court concludes that Exclusion j(6) was not clearly and

18  unambiguously applicable under the facts alleged in the Counterclaim.

19

20  _____

21       [3] The Magistrate Judge's findings and recommendations in *Thomas* were reviewed *de novo* by the district court, which determined, among other things, that the Magistrate Judge

22  correctly construed the term "abandoned" in the insurance policy.  *Thomas v. Nautilus Ins. Co.*, No. CV 11-40-M-DWM-JCL, 2011 WL 4369496, at *1 (D. Mont. Sept. 19, 2011).

### c.  Cross-Claim Exclusion

The Cross-Claim Exclusion in the Policies excludes "[a]ny claim or 'suit' for damages by any insured against another insured."  (Fisher Decl. Ex. 1 at ASIC0090.)  As discussed previously, a "suit" is defined as "a civil proceeding in which damages because of . . . 'property damage'  . . . to which this insurance applies are alleged."  (*Id.* Ex. 1 at ASIC0081.)  The Additional Insured Endorsement amended the definition of who is an insured under the Policies to include an organization or governmental entity "to which you are obligated, by virtue of a legally enforceable written contract . . . to provide insurance such as is afforded by this policy . . . ."  (*Id.* Ex. 1 at ASIC0108.)  "Coverage under this Endorsement applies only as respects a legally enforceable written contract or permit with the Named Insured under this policy and only for liability arising out of or relating to the Names [sic] Insured's negligence."  (*Id.*)  Therefore, the plain language of the Cross-Claim Exclusion excludes coverage for suits between entities to which Mattila is obligated, by virtue of a legally enforceable written contract, to provide CGL insurance.

The Counterclaim includes allegations that strongly suggest, but do not "clearly and unambiguously" allege, that Mattila was contractually obligated to provide King County with insurance.  (*See, e.g.*, Harper Decl. Ex. F ¶ 10.14 ("MidMountain also had a duty to ensure that its subcontractors provided insurance that added King County as an additional insured.").)  Indeed, even if MidMountain had a duty to ensure that Mattila included King County as an additional insured, such an allegation does not clearly and unambiguously establish that Mattila entered into a legally enforceable written contract to

1  provide King County with insurance.  Furthermore, although an insurer may consider

2  facts outside of the complaint under certain circumstances to trigger the duty to defend, it

3  "may not rely on facts extrinsic to the complaint to deny the duty to defend."  *Woo v.*

4  *Fireman's Fund Ins. Co.*, 164 F.3d 454, 459 (Wash. 2007).  Thus, ASIC could not look

5  beyond the Counterclaim to determine whether Mattila was contractually obligated to

6  provide King County with insurance in order to deny a defense.  As such, the Cross-

7  Claim Exclusion does not exclude a duty to defend based on the allegations in the

8  Counterclaim.

9     **2.  Breach of Duty to Defend**

10        Because the court has concluded that, as a matter of law, the Counterclaim

11  triggered ASIC's duty to defend, it must consider whether MidMountain is entitled to a

12  summary judgment ruling that ASIC breached its duty to defend.  (MM Mot. at 21-23.)

13  Here, there is no dispute that on June 30, 2011, ASIC agreed to defend MidMountain

14  under a reservation of rights and retained defense counsel to defend MidMountain to the

15  extent that MidMountain faced liability arising out of Mattila's negligence.[4]  (Fisher

16  Decl. Ex. 7.)  MidMountain nevertheless asserts that ASIC breached its duty to defend

17  two times prior to June 30, 2011:  first, when ASIC failed to appoint defense counsel for

18  MidMountain for the February 2011 mediation; and second, when ASIC did not accept

19  tender of defense in its May 24, 2011 letter to MidMountain.  (MM Mot. at 23.)

20  _____

21    [4] The parties, however, dispute whether the counsel ASIC retained was qualified to
    represent MidMountain.  The court need not resolve this issue to address the specific issues
22  raised in MidMountain's motion, namely whether ASIC breached its duty to defend prior to
    agreeing to defend.

1     MidMountain's first argument is premised on the assumption that the February

2   2011 mediation qualified as a "suit" within the meaning of the Policies.  Washington

3   courts have not yet considered whether pre-litigation mediation, like the February 2011

4   mediation here, would fall within the meaning of a "suit" as defined by the Policies.

5   Insurance commentator Allan Windt, however, has explained why pre-litigation

6   mediation should not qualify as a "suit":

7        Although, in the abstract, a mediation proceeding constitutes an alternative
         dispute resolution proceeding, reading the policy as a whole, only a
8        mediation in the context of an adjudicatory proceeding can trigger an
         insurer's duty to defend.  That is true for two reasons.  First, absent an
9        adjudicatory proceeding—that is, a proceeding the result of which the
         insured can become obligated to pay damages—there is nothing to
10       "defend" against.  Second, insureds have the right to enter into mediation
         proceedings.  The "consent" requirement, therefore, indicates that in order
11       for a proceeding to trigger a duty to defend, the proceeding must be one to
         which the insurer can withhold consent.  The only alternative dispute
12       resolution proceeding to which an insurer would need to consent before the
         insured would have a right to participate is a proceeding that could result in
13       an adjudication.

14   Windt, *Insurance Claims & Disputes*, § 4:1 n.3 (5th ed. 2007).  The court agrees with this

15   analysis, and therefore concludes that, as a matter of law, ASIC did not owe

16   MidMountain a duty to defend it at the February 2011 mediation.[5]

17       MidMountain's second argument is that ASIC's two-and-a-half month delay in

18   offering to provide a defense was a breach of the duty to defend.  (MM Mot. at 21-23.)

19   MidMountain's argument is unavailing, and the cases its relies upon are distinguishable.

20

21       [5] MidMountain makes a half-hearted attempt to argue that ASIC consented to the
     mediation and therefore the mediation qualified as a "suit."  (*See* MM Mot. at 21.)  The evidence
22   in the record, however, does not support MidMountain's position.

ORDER- 20

1   MidMountain relies primarily on *Newmont USA Ltd. v. American Home Assurance Co.*,

2   676 F. Supp. 2d 1146 (E.D. Wash. 2009).  (MM Mot. at 22.)  In *Newmont*, the court

3   concluded that one insurer breached its duty to defend by failing to ever respond to the

4   tender of defense, and that a second insurer breached its duty to defend by failing accept

5   defense until two years after tender.  *Newmont*, 676 F. Supp. 2d at 1161-62; *see also*

6   *Ledcor Indus. (USA), Inc. v. Mut. of Enumclaw Ins. Co.*, No. 59705-1-I, 2008 WL

7   4651130 (Wash. Ct. App. Oct. 20, 2008) (finding that 13-month delay between tender

8   and acceptance of defense breached duty to defend); *Kirby v. Hartford Casualty*

9   *Insurance Co.*, No. CIV.A. 3:02-CV-1616-L, 2004 WL 2165367 (N.D. Tex. Sept. 23,

10  2004) (finding that delay of approximately one year breached the duty to defend).  By

11  contrast, here, ASIC accepted its duty to defend only two-and-a-half months after

12  receiving MidMountain's claim.  This instant matter is more analogous to *Cardenas v.*

13  *Navigators Insurance Co.*, No. C11-5578 RJB, 2011 WL 6300253 (W.D. Wash. Dec. 16,

14  2011), in which there was a two-month delay between tender and acceptance of a

15  defense, and the court found that there was no breach of contract.  *Id.* at *2, *4.

16  Accordingly, the court concludes that MidMountain has failed to present facts

17  establishing that ASIC breached its duty to defend by offering to provide a defense two-

18  and-a-half months after MidMountain's tender.[6]  The court thus denies MidMountain's

19  motion for partial summary judgment on this issue.

20

_____

21      [6] MidMountain's arguments that ASIC breached its duty to defend because it violated

22  certain Washington insurance regulations does not change the court's analysis under the facts
    presented here.  *See Cardenas*, 2011 WL 6300253, at *6.

**D.  ASIC's Motion for Summary Judgment**

ASIC argues that it is entitled to summary judgment because it did not breach its duty to defend MidMountain prior to accepting defense and that it is absolved of any duties to MidMountain under the Policies because MidMountain breached the insurance contract by rejecting ASIC's offer of defense.  (ASIC Mot. at 11-19.)  ASIC further contends that it has no duty to defend or indemnify because Exclusions j(5) and j(6) bar coverage, as does the Cross-Claim Exclusion.  (*Id.* at 19-22.)  ASIC also argues that summary judgment is proper because MidMountain has suffered no damages, ASIC's policy is excess over the policies of MidMountain's other insurers, and any obligation to defend and indemnify was eliminated when the state court dismissed Mattila from the Underlying Action with prejudice.[7]  (*Id.* at 22-25.)  The court will address each issue in turn.

**1.  Breach of Duty to Defend by ASIC**

ASIC argues that it is entitled to summary judgment because it did not breach its duty to defend MidMountain.  (*Id.* at 11-12.)  For the reasons described above with respect to MidMountain's motion, the court agrees with ASIC that the undisputed evidence establishes that it did not breach its duty to defend in either refusing to defend MidMountain at the February 2011 mediation or by accepting its duty to defend two-and-

---

[7] For the first time in its reply brief, ASIC argues that MidMountain's extra-contractual claims should be dismissed as a matter of law.  (Reply to ASIC Mot. (Dkt. # 108) at 10-11.)  "Arguments cannot be raised properly for the first time on reply."  *Amazon.com LLC v. Lay*, 758 F. Supp. 2d 1154, 1171 (W.D. Wash. 2010); *see also Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").  Accordingly, the court will not consider ASIC's arguments regarding these claims.

1   a-half months after receiving MidMountain's tender.  Accordingly, the court grants

2   ASIC's motion on this issue.

3       **2.  Breach of Insurance Contract by MidMountain**

4       ASIC argues that MidMountain's rejection of ASIC's offered defense is a material

5   breach of the insurance policies, and therefore it is relieved of all of its obligations under

6   the Policies.  (*Id.* at 13-19.)  In particular, ASIC contends that MidMountain breached its

7   contractual duties to cooperate with ASIC and to refrain from incurring any expense

8   without ASIC's consent.  (*Id.* at 18.)  The Policies contain a "cooperation" clause, which

9   states in relevant part:  "You and any other involved insured must: . . . (3) Cooperate with

10  us in the investigation or settlement of the claim or defense against the 'suit' . . . ."

11  (Fisher Decl. Ex. 1 at ASIC0078.)  Additionally, the Policies include a "voluntary

12  payment" clause, which provides in relevant part:  "No insured will, expect at the

13  Insured's own cost, voluntarily make a payment, assume any obligation, or incur any

14  expense . . . without our consent."  (*Id.*)

15      Under Washington law, where an insured breaches a "cooperation" or "voluntary

16  payment" clause of an insurance policy, the insurer is not relieved of its duties under the

17  insurance policy unless it can show that the failure to cooperate or the voluntary payment

18  caused it "actual and substantial prejudice."  *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*,

19  191 P.3d 866, 876 (Wash. 2008); *Griffin v. Allstate Ins. Co.*, 29 P.3d 777, 783 (Wash. Ct.

20

21

22

App. 2001).[8]  Whether breach of one of these clauses "prejudiced an insurer is a question of fact, and it will seldom be decided as a matter of law."  *Mut. of Enumclaw*, 191 P.3d at 876 (citing *Tran v. State Farm Fire & Cas. Co.*, 961 P.2d 358, 365 (Wash. 1998)).  "The insurer has the burden of proving actual and substantial prejudice from the breach."  *Id.* (citing *Or. Auto. Ins. Co. v. Salzberg*, 535 P.2d 816, 819 (Wash. 1975)).

Here, ASIC's entire argument in support of summary judgment on this issue focuses on whether MidMountain's actions breached the Policies, and it wholly fails to address the issue of prejudice.  (*See generally* ASIC Mot.; Reply to ASIC Mot. (Dkt. # 108).)  Because prejudice is an essential element of ASIC's claim that it is relieved of all duties under the Policies, and ASIC has failed to satisfy its initial summary judgment burden on this essential element, the court denies ASIC's motion for summary judgment on the issue of whether MidMountain's actions relieved ASIC of its obligations under the Policies.[9]

\\

\\

\\

---

[8] Although *Mutual of Enumclaw* involved breach of a "notice" clause, the Washington State Supreme Court determined that it could look to cases dealing with "consent to settle" and "cooperation" clauses in developing the contours of the "prejudice" rule, reasoning that these types of clauses are intended to prevent the insured's actions from prejudicing the insurer.  191 P.3d at 876 n.12.  Accordingly, the Court's discussion of prejudice is equally applicable to "cooperation" and "voluntary payment" clauses.  *See id.*

[9] To resolve this issue, the court need not address whether MidMountain breached any of the contractual provisions as alleged by ASIC.

### 3.  Exclusions j(5) and j(6) as Bars to Coverage

ASIC next argues that it is entitled to summary judgment because it has no duty to defend as coverage is precluded by Exclusions j(5) and j(6) of the Policies.[10]  (ASIC Mot. at 19.)  ASIC bears the burden of proving that property damages that fall within the scope of the Policies are excluded from coverage under the Policies.  *See, e.g.*, *Am. Star Ins. Co. v. Grice*, 854 P.2d 622, 625-26 (Wash. 1993).  As noted above, exclusions are strictly construed against the insurer because they are contrary to the protective purpose of insurance.  *See Diamaco*, 983 P.2d at 711.

As discussed above with respect to MidMountain's motion, the relevant issue with respect to Exclusion j(5) is whether the damage occurred at the time Mattila was performing its operations.  *See Dewitt Constr.*, 307 F.3d at 1135; *Mid-Continent*, 2009 WL 1587215, at *3.  Although the undisputed evidence establishes that Mattila walked off the job, ASIC has not presented any evidence regarding when the damage occurred in relation to Mattila's departure from the Project.  As such, a reasonable jury, viewing the evidence in MidMountain's favor, would be unable to conclude that the damage occurred while Mattila's operations were continuing.  The mere fact that Mattila did not complete its work does not satisfy ASIC's summary judgment burden of establishing that the

---

[10] In a footnote in its motion for summary judgment, ASIC asserts that Exclusions a and b also operate to bar coverage.  (ASIC Mot. at 20 n.3.)  In a footnote in MidMountain's response, MidMountain contended that ASIC's passing mention of the exclusions does not merit consideration by the court.  (Resp. to ASIC Mot. (Dkt. # 105) at 8 n.27.)  In its reply, ASIC included a four-sentence argument, without citation to case law or the record, in support of the application of Exclusions a and b.  (Reply to ASIC Mot. at 7.)  Having considered ASIC's cursory argument, the court concludes that it has not satisfied its summary judgment burden on this issue.

1   damage occurred at the time Mattila was performing its operations.  Because ASIC has

2   presented no evidence establishing when the damage occurred, is not entitled to a ruling

3   that Exclusion j(5) bars coverage here.

4        Similarly, ASIC has not presented evidence establishing the applicability of

5   Exclusion j(6).  As discussed above, the court has concluded that the term "abandon" is

6   ambiguous and thus construed it in MidMountain's favor to require only that the insured

7   "abandon" its work.  *See Weyerhaeuser*, 15 P.3d at 122.  Here, the undisputed evidence

8   establishes that Mattila walked off the project, and a reasonable jury viewing the

9   evidence in MidMountain's favor could conclude that Mattila "abandoned" its work

10  within the meaning of the Policies.  As such, ASIC has not satisfied its summary

11  judgment burden of showing that coverage is excluded as a matter of law by the

12  exception to the PCOH.  The court thus denies ASIC's motion for summary judgment

13  with respect to Exclusion j(6).

14  **4.  Cross-Claim Exclusion as Bar to Coverage**

15       ASIC argues that summary judgment in its favor is warranted because

16  MidMountain is not entitled to indemnification under the Cross-Claims Exclusion.

17  (ASIC Mot. at 21-22.)  As discussed above, the plain language of the Policies excludes

18  coverage for suits between entities to which Mattila is obligated, by virtue of a legally

19  enforceable written contract, to provide CGL insurance.  Although ASIC was limited to

20  the four-corners of the Counterclaim in determining whether its duty to defend was

21  triggered, the court is not so limited in determining whether indemnity is in fact provided

22  by the Policies.  The subcontract between MidMountain and Mattila requires Mattila to

ORDER- 26

1  obtain an endorsement to its CGL insurance that "names [MidMountain] and [King

2  County] as additional insureds for claims arising out of subcontractor's work . . . ."

3  (Mills Decl. Ex. 1 at ASIC1664; *see also id.* Ex. 1 at ASIC1656.)  As such, because

4  Mattila was contractually required to provide insurance to both MidMountain and King

5  County, the plain language of the Cross-Claim Exclusion bars coverage here.

6  MidMountain makes several arguments against application of the Cross-Claim

7  Exclusion, none of which the court finds persuasive.  First, it argues that the Cross-Claim

8  Exclusion is ambiguous as to whether it bars coverage for a suit against an "Additional

9  Insured," as opposed to an "insured."  (MM Supp. Br. (Dkt. # 132) at 3.)  According to

10  MidMountain, because the Policies use "insureds" and "Additional Insureds" together in

11  certain sections, they must have different meanings.  (*Id.* at 4 (citing Fisher Decl. Ex. 1 at

12  ASIC0091-92 (Contractors Prior Manifestation Amendment of the Insuring Agreement

13  Endorsement)).)  MidMountain contends that ASIC's failure to expressly use the term

14  "Additional Insureds" in the Cross-Claim Exclusion must be construed against it and

15  should not be construed to include "Additional Insureds" when that term is not used

16  expressly.  (*Id.* (citing *Lynott v. Nat'l Union Fire Ins. Co.*, 871 P.2d 146 (Wash. 1994)

17  ("In evaluating the insurer's claim as to the meaning of language used, courts necessarily

18  consider whether alternative or more precise language, if used, would have put the matter

19  beyond reasonable question."))).)  The Cross-Claim Exclusion, however, clearly and

20  unambiguously includes Additional Insureds who qualify as such based on a legally

21  enforceable contract and are therefore included in the amended definition of "insureds"

22  provided in the Additional Insured Endorsement.  (*See* Fischer Decl. Ex. 1 at ASIC0108.)

1   That one endorsement uses both "insured" and "Additional Insured" may suggest that the

2   terms have different meanings, but it does not establish that the terms are mutually

3   exclusive.  Indeed, under the only Additional Insured Endorsement contained in the

4   Policies, all "Additional Insureds" qualify as "insureds" because the endorsement

5   amended the definition of "insured."  (*See id.*)  Under these facts, the court does not find

6   the Policies' use of the term "insured" ambiguous as to whether it includes MidMountain

7   and King County; there is only one reasonable interpretation of the Additional Insured

8   Endorsement, which is that MidMountain and King County are both "insureds" under the

9   Policies.

10          Second, MidMountain contends that applying the Cross-Claim Exclusion to bar

11  coverage for MidMountain would render the additional insured coverage provided for in

12  the Policies illusory.[11]  (MM Supp. Br. at 5.)  The court disagrees.  The Policies still

13  provide coverage for MidMountain against covered claims by anyone who does not

14  qualify as an "insured" under the Policies.  *See Quadrant Corp.*, 110 P.3d at 735, 744

15  (concluding that pollution exclusion clause in an insurance policy did not render the

16  coverage illusory with respect to building owners because the insurance policy still

17  covered a variety of claims).  As such, the court's construction of the Cross-Claim

18  Exclusion does not render additional insured coverage illusory.

19

20

21          [11] MidMountain relies on *Twin City Fire Insurance Co. v. Ohio Casualty Insurance Co.*, 480 F.3d 1254 (11th Cir. 2007).  The insurance policy in *Twin City* contained different language in the cross-claim exclusion and the additional insured provision than the Policies at issue here. *Id.* at 1262.  As such, the court declines to apply the Eleventh Circuit's reasoning to the instant dispute.

22

1    Finally, MidMountain asserts that ASIC is judicially estopped to claim that King

2    County is an insured because ASIC took the opposite position in a state court action

3    brought by King County against the parties to the instant dispute.  (Resp. to ASIC Mot.

4    (Dkt. # 105) at 10-11; MM Supp. Br. at 2-3.)  MidMountain points to ASIC's answer to

5    King County's complaint in that action, in which ASIC "denied that King County

6    qualifies as an additional insured under [the Policies]."  (Resp. to ASIC Mot. at 11

7    (quoting Supp. Harper Decl. (Dkt. # 98) Ex. A (ASIC Ans. to Compl. in Case No. 11-2-

8    36992-7 SEA) ¶ 3.11).)  Based on ASIC's answer, MidMountain contends that ASIC

9    cannot now assert that King County is an insured.  (*Id.*)  ASIC responds that it has never

10   taken an inconsistent position with respect to King County; rather, it has consistently

11   maintained that King County is not entitled to coverage for the tendered "suit," regardless

12   of whether King County is an insured under the Policies.  (Reply to ASIC Mot. at 7.)

13   "Judicial estoppel precludes a party from gaining an advantage by taking one

14   position, and then seeking a second advantage by taking an incompatible position."

15   *Hartford Fire Ins. Co. v. Leahy*, 774 F. Supp. 2d 1104, 1114-15 (W.D. Wash. 2011)

16   (citing *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996)).

17   Judicial estoppel is applied "because of 'general consideration[s] of the orderly

18   administration of justice and regard for the dignity of judicial proceedings,' and to

19   'protect against a litigant playing fast and loose with the courts.'"  *Hamilton v. State*

20   *Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (quoting *Russell v. Rolfs*, 893

21   F.2d 1033, 1037 (9th Cir. 1990)).  "Judicial estoppel applies to a party's stated position

22   whether it is an expression of intention, statement of fact, or a legal assertion."  *Leahy*,

1  774 F. Supp. 2d at 1115 (citing *Wagner v. Prof'l Eng'rs in Cal. Gov't*, 354 F.3d 1036,

2  1044 (9th Cir. 2004)).  As this court explained in *Leahy*:

> The Supreme Court has established certain factors that district courts may take into consideration when deciding whether judicial estoppel is appropriate in a given case:  (1) whether the party's later position is "clearly inconsistent" with its earlier position; (2) whether the party has successfully advanced the earlier position, such that judicial acceptance of an inconsistent position in the later proceeding would create a perception that either the first or the second court had been misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose unfair detriment on the opposing party if not estopped. *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).  The Supreme Court further noted, however, that the doctrine is "probably not reducible to any general formulation of principle," and that by enumerating the factors to be considered, the Court did "not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *Id.*  "Additional considerations may inform the doctrine's application in specific factual contexts."  *Id.* at 751.

*Leahy*, 774 F. Supp. 2d at 1115.

The court concludes that judicial estoppel is not appropriately applied to the instant dispute.  Although the court agrees with MidMountain that the language in ASIC's answer appears contrary to ASIC's current position that King County is an insured, the court also recognizes the consistency in ASIC's position that King County is not entitled to coverage for the tendered "suit."  Furthermore, there is no evidence in the record that ASIC has successfully advanced its position in the state court action, or that it is playing "fast and loose" with the courts.  Additionally, there is no evidence in the record that ASIC would obtain an unfair advantage or that MidMountain would suffer an unfair detriment if the court allows ASIC to assert that King County is an insured.  Finally, the court notes that ASIC's representation regarding King County's status as an

1  additional insured was made in a pleading that can be amended to more accurately reflect

2  ASIC's consistent position that King County is not entitled to coverage for the tendered

3  "suit" under the Policies.  Wash. Superior Ct. C. R. 15 (permitting amendment even after

4  trial to conform pleadings to evidence at trial).  For these reasons, the court declines to

5  foreclose ASIC's Cross-Claim Exclusion argument on the basis of judicial estoppel.

6       In sum, the court grants ASIC's motion for summary judgment on the issue of

7  whether MidMountain is entitled to indemnification under the Policies for any liability

8  arising out of the Counterclaim in the Underlying Action.

9       **5.  Damages to MidMountain**

10  ASIC next argues that MidMountain's claims must fail because it has not suffered

11  any damages given that it has received a complete defense from other insurers.  (ASIC

12  Mot. at 22-23.)  In response, MidMountain has presented evidence that it is not receiving

13  a "complete" defense because it has incurred over $250,000.00 in unreimbursed legal

14  fees, costs, and other expenses in defending King County's counterclaims.  (Supp. Mills

15  Decl. (Dkt. # 99) ¶ 3.)  As such, genuine issues of material fact preclude summary

16  judgment, and the court denies summary judgment on this issue.

17       **6.  ASIC's Policies as Excess Over Other Insurers' Policies**

18  As an alternative ground for summary judgment, ASIC contends that the Policies

19  are excess over the Virginia Surety Company, Inc. ("Virginia Surety") and National

20  Union Fire Insurance Company of Pittsburgh, PA ("NUFIC") policies under which

21  MidMountain is an additional insured.  (ASIC Mot. at 23-24.)  The whole of ASIC's

22  argument on this issue in its motion is as follows:

The ASIC policies are excess over "[a]ny other primary insurance available to you covering liability for damage arising out of the premises or operations for which you have been added as an additional insured . . . ." *See* Ex. 1 to Fisher Decl. at ASIC 0078.  ASIC therefore has no duty to defend [MidMountain] against any "suit" if any other insurer has a duty to defend the insured against that "suit."  *Id.*  To the extent Virginia Surety and NUFIC provide additional insured coverage to [MidMountain], the ASIC policies are excess over the Virginia Surety and NUFIC policies.

(*Id.*)  In response, MidMountain asserts that ASIC failed to provide enough information to the court to satisfy its initial summary judgment burden because, among other things, ASIC failed to provide the court with copies of all of the applicable insurance policies, which is necessary for the court to evaluate the applicability of the "other insurance" clause in the Policies.  (Resp. to ASIC Mot. at 13-14 (citing *Weyerhaeuser*, 15 P.3d at 115).)  In support of its position, MidMountain relies on the rule of law in Washington that, generally, when two insurance policies each contain "other insurance" clauses purporting to make each policy excess of the other, the clauses are mutually repugnant and thus have no effect.  (*Id.* at 14 (citing *Pac. Indem. Co. v. Federated Am. Ins. Co.*, 456 P.2d 331 (Wash. 1969), *overruled on other grounds by Mission Ins. Co. v. Allendate Mut. Ins. Co.*, 626 P.2d 505 (Wash. 1981)).)  MidMountain also argues that even if the Policies were excess, it would merely create an issue among the three insurers over apportionment and would not be grounds to relieve ASIC of its liability to MidMountain.  (*Id.* at 15 (citing *Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co.*, 45 Cal. App. 4th 1, 105-06 (Cal. Ct. App. 1996)).)

Along with its reply brief, ASIC submitted excerpts from the Virginia Surety and NUFIC policies, namely the additional insured endorsements and the "other insurance"

1   clauses.  (*See* Supp. Duany Decl. (Dkt. # 109) Exs. 17, 18.)  The "other insurance"

2   clauses in the Virginia Surety and NUFIC policies provided that the policies were excess

3   to "[a]ny other primary insurance available to you covering liability for damages arising

4   out of the premises or operations . . . for which you have been added as an additional

5   insured."  (*Id.* Exs. 17, 18.)  As such, these clauses are materially identical to the "other

6   insurance" clause in the Policies.  ASIC nevertheless asserts in its reply that "[t]he plain

7   language of the other insurance clauses demonstrates that the ASIC policies are excess

8   over the Virginia Surety and NUFIC policies."  (Reply to ASIC Mot. at 9.)  ASIC offers

9   no further explanation for why this is so, particularly in light of the materially identical

10  "other insurance" clauses in the three policies.

11      The court concludes that ASIC has failed to satisfy its summary judgment burden

12  of establishing that the Policies are excess over the Virginia Surety and NUFIC policies.

13  Under Washington law, when policies contain similar provisions at the same coverage

14  level, "other insurances" clauses in each policy purporting to make the policy excess over

15  the other policy are disregarded as "mutually repugnant."  *Polygon Nw. Co. v. Am. Nat'l*

16  *Fire Ins.*, 189 P.3d 777, 778 (Wash. Ct. App. 2008) (citing *Pac. Indem. Co.*, 456 P.2d at

17  331).  Here, the three applicable policies contain materially identical "other insurance"

18  clauses.  Therefore, each purports to be excess of the others.  Yet ASIC has failed to

19  explain why the "other insurance" clause in its Policies should trump those in the

20  Virginia Surety and NUFIC policies.  The scant discussion provided by ASIC does not

21  satisfy its dual burdens of establishing entitlement to summary judgment, *see Celotex*,

22  477 U.S. at 323, and "to an exclusion of liability based upon the existence of other

1   insurance," *Weyerhaeuser*, 15 P.3d at 127.  Accordingly, the court denies ASIC's motion

2   for summary judgment on the issue of whether its Policies are excess.

3         **7.  Dismissal of Mattila With Prejudice**

4         Finally, ASIC argues that any defense obligation was eliminated as of November

5   29, 2011, when the court in the Underlying Action dismissed Mattila with prejudice

6   pursuant to the parties' stipulation.  (ASIC Mot. at 24.)  ASIC's position is premised on

7   the doctrine of *res judicata*, which ASIC maintains is a bar to any claim by MidMountain

8   or King County that King County is seeking damages because of Mattila's negligence so

9   as to trigger the additional insured coverage under the Policies.  (*Id.*)  According to ASIC,

10  because any potential for liability arising out of Mattila's negligence has now been

11  eliminated, there can no longer be a defense obligation.  (*Id.*)

12        The court is not persuaded by ASIC's arguments.  The Additional Insured

13  Endorsement does not require that Mattila be the subject of a lawsuit or otherwise held

14  liable for its own negligence.  Rather, MidMountain is covered under the endorsement

15  "for liability *arising out of or relating to* the Names [sic] Insured's negligence."  (Fischer

16  Decl. Ex. 1 at ASIC0108 (emphasis added).)  Even if Mattila is no longer a party to the

17  Underlying Action, it remains possible that MidMountain will be held liable for damages

18  "arising out of or relating to" Mattila's negligence.  ASIC has cited no case law that

19  dictates the result it advocates here, and the court declines to adopt its position.

20  Accordingly, the court denies ASIC's motion for summary judgment on this issue.

21

22

1

## IV.   CONCLUSION

2          For the foregoing reasons, the court GRANTS in part and DENIES in part

3   MidMountain's motion for partial summary judgment regarding ASIC's duty to defend

4   (Dkt. # 70) and GRANTS in part and DENIES in part ASIC's cross-motion for summary

5   judgment (Dkt. # 101).  The court orders MidMountain and ASIC to file a joint status

6   report within 14 days of the date of this order identifying any claims remaining for trial in

7   light of the court's rulings on the cross-motions for summary judgment.

8          Dated this 5th day of September, 2012.

9

10

11          _____

12          JAMES L. ROBART
            United States District Judge

13

14

15

16

17

18

19

20

21

22

ORDER- 35