1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MIDMOUTAIN CONTRACTORS, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN SAFETY INDEMNITY COMPANY, et al., <br><br> Defendants. | CASE NO. C10-1239JLR <br><br> ORDER GRANTING MOTION TO STRIKE |

Before the court is American Safety Insurance Company's ("ASIC") "Motion to Strike Part of Court's September 5, 2012, Summary Judgment Order." (Mot. (Dkt. # 163).) The parties have reached a settlement in this matter that resolves all claims but, as one of its terms, permits ASIC to make this motion. (Andersen Decl. (Dkt. # 164) ¶¶ 2-4.) In the motion, which is unopposed, ASIC asks the court to strike a portion of the court's prior summary judgment order that ASIC believes would establish precedent contrary to its interests. (*See* Mot. at 4.) The court GRANTS the motion.

ORDER- 1

## I. BACKGROUND

This is an insurance coverage dispute. MidMountain served as the general contractor to King County for construction of a new wastewater conveyance pump station in Kirkland, Washington, known as the Juanita Bay Pump Station. (Mills Decl. (Dkt. # 90) ¶ 3.) MidMountain obtained an insurance policy from ASIC in connection with the project and eventually made claims on that policy. In this action, MidMountain alleges that ASIC breached material terms of the policy including its duty to defend MidMountain. (Am. Compl. (Dkt. # 42) ¶¶ 70-84.) There were numerous other parties in the case as well, but all have now settled or been dismissed. (*See generally* Am. Compl.; Stip. Order of Dismissal (Dkt. # 161); Stip. Order of Dismissal (Dkt. # 166).) Indeed, this case is now all but resolved. All parties have either been dismissed or have settled. (*See* Mot. at 1.) MidMountain and ASIC are the only parties remaining, and they too have reached a settlement agreement. (*Id.* at 1-2.)

Only one issue remains in the case. The settlement agreement between MidMountain and ASIC "includes as a material term the ability of [ASIC] to make this motion" to strike portions of a summary judgment order. (*Id.* at 2.) This term is "part of the consideration for [ASIC's] agreement to settle and forego any right to appeal prior rulings . . . ." (*Id.*) MidMountain has agreed not to oppose the motion. (*Id.*)

Accordingly, ASIC now moves to strike the following portion of the court's prior order:

    **a. Exclusion j(5)**

ORDER- 2

1    Exclusion j(5) provides that there is no coverage for "Property Damage" to "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations." (Fisher Decl. Ex. 1 at ASIC0073.) This exclusion applies only to damage that occurred at the time Mattila was performing operations. *Dewitt Constr.*, 307 F.3d at 1135 (applying Washington law to policy language identical, in relevant part, to that of Exclusion j(5)); *Canal Indem. Co. v. Adair Homes, Inc.* ("*Canal I*"), 737 F. Supp. 2d 1294, 1301 (W.D. Wash. 2010), *aff'd* 445 Fed. Appx. 938 (9th Cir. 2011) (concluding that exclusion identical to Exclusion j(5) "bars coverage for damages occurring during [the insured's] construction of the home"); *Mid-Continent Cas. Co. v. Tital Constr. Corp.*, No. 05-CV-1240 MJP, 2009 WL 1587215, at *3 (W.D. Wash. Jun. 5, 2009), *aff'd* 440 Fed. Appx. 547 (9th Cir. 2011) (same); *see also Vandivort Constr. Co. v. Seattle Tennis Club*, 522 P.2d 198, 201 (Wash. Ct. App. 1974) (holding that exclusion similar to Exclusion j(5) applied to damages occurring while insured was performing operations on the property). Here, there is no allegation in the Counterclaim regarding whether Mattila was performing operations at the time the property damage occurred. Therefore, Exclusion j(5) does not clearly and unambiguously bar coverage.

ASIC relies on *Canal Indemnity Co. v. Adair Homes, Inc.* ("*Canal II*"), 445 Fed. Appx. 938 (9th Cir. 2011) (unpublished), and *Harrison Plumbing & Heating, Inc. v. New Hampshire Insurance Group*, 681 P.2d 875 (Wash. Ct. App. 1984), to argue that Exclusion j(5) applies to operations during construction, as well as to direct damages stemming from the alleged defective construction, regardless of when those damages occurred. (Resp. to MM Mot. at 20-22.) Neither case changes the court's conclusion. First, as an unpublished disposition or order, *Canal II* is not binding on the court. *See* Ninth Cir. R. 36-3(a). The trial court order that *Canal II* affirmed, however, supports the court's conclusion that Exclusion j(5) applies only to property damages occurring during construction. *See Canal I*, 737 F. Supp. 2d at 1301-02 ("[T]he plain and unambiguous language of the ongoing operations exclusion bars coverage for the Pearsons' property damages occurring during construction of the residence."). Second, *Harrison Plumbing* does not assist the court in interpreting the scope of Exclusion j(5) because it involved a differently worded exclusion. *See Harrison Plumbing*, 681 P.2d at 878-79 (construing policy that excluded "property damage . . . to . . . that particular part of any property, not on premises owned by or rented to the insured, . . . the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured . .

ORDER- 3

.") (alterations in original).  Accordingly, the court concludes that, based on the allegations in the Counterclaim, Exclusion j(5) does not bar coverage.

**b.  Exclusion j(6)**

Exclusion j(6) provides that there is no coverage for "Property Damage" to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." (Fisher Decl. Ex. 1 at ASIC0073.)  Exclusion j(6), however, "does not apply to 'property damage' included in the 'products-completed operations hazard.'" (*Id.*)  In other words, Exclusion j(6) is itself subject to an exception for damages included in the PCOH.  If damages fall within the PCOH, then Exclusion j(6) does not apply.  The PCOH includes in relevant part "all . . . 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except:  (1) Products that are still within your physical possession; or (2) Work that has not yet been completed or abandoned." (*Id.* at ASIC0081.)  The PCOH, therefore, is subject to its own exceptions.  For the sake of clarity, the court provides the following summary of the exceptions relevant to Exclusion j(6).  First, if Exclusion j(6) applies, then MidMountain is not entitled to coverage.  If, however, the PCOH applies, then Exclusion j(6) does not apply.  Nevertheless, if the damage at issue occurred while Mattila's work was still ongoing, then the PCOH does not apply, Exclusion j(6) does apply, and MidMountain is not entitled to coverage.  *See Mid-Continent*, 2009 WL 1587215, at *4 (interpreting identical policy language).

ASIC argues that because the Counterclaim alleged that Mattila never completed its work on the Project, the PCOH does not apply and Exclusion j(6) clearly and unambiguously applied to bar coverage.  (*See* Resp. to MM Mot. at 21-22.)  To come to this conclusion, ASIC asserts that Mattila did not "abandon" the work within the meaning of the exclusion to the PCOH.  (*Id.*)  ASIC relies on *Claredon American Insurance Co. v. General Security Indemnity Co. of Arizona*, 193 Cal. App. 4th 1311 (Cal. Ct. App. 2011), a case in which the court interpreted a PCOH provision identical to the one at issue here.  (Resp. to MM Mot. at 21-22.)  In *Claredon*, a homeowner hired a contractor to build a residence but fired the contractor before the home had been completed.  193 Cal. App. 4th at 1314.  The court concluded that the project had not been abandoned within the meaning of the PCOH in the contractor's CGL policy.  *Id.* at 1319.  In coming to this conclusion, the court construed the term "abandoned" as requiring that "both sides to [the] contract expressly announce their intention to abandon it, releasing both sides from their respective duties under the contract."  *Id.*  Applying the construction of "abandon"

ORDER- 4

articulated by the *Claredon* court, ASIC contends that there was no mutual intent here because MidMountain and Mattila filed claims against one another for breach of contract, thereby demonstrating a mutual intent to enforce their contract. (Resp. to MM Mot. at 21.)

The court declines to follow *Claredon* here. Under Washington law, the court must give the Policies a "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Weyerhaeuser*, 15 P.3d at 122 (quoting *Am. Nat'l Fire Ins.*, 951 P.2d at 256). When a clause is susceptible to two or more reasonable interpretations, the clause is considered ambiguous and it is construed in favor of the insured. *Id.* The term "abandon" is not defined in the ASIC Policies, and it is susceptible to at least two reasonable interpretations when read in context. "The term could, for example, be read as requiring only that the insured have 'abandoned' its work, or as requiring that all parties to the construction contract have 'abandoned' the project." *Thomas v. Nautilus Ins. Co.*, No. CV 11-40-M-DWM-JCL, 2011 WL 4369519, at *10 (D. Mont. Aug. 24, 2011) (construing a PCOH clause identical to the one at issue here).[1] Because the term "abandon" is ambiguous, the court construes it in MidMountain's favor to require only that the insured "abandon" its work. *See Weyerhaeuser*, 15 P.3d at 122. In light of this construction, the court concludes that Exclusion j(6) was not clearly and unambiguously applicable under the facts alleged in the Counterclaim.

(Mot. at 2; 9/5/12 Order (Dkt. # 142) at 13-17.) As the parties agreed, MidMountain does not oppose the motion. (Mot. at 1-2.)

## II. DISCUSSION

Federal Rule of Civil Procedure 54(b) governs this motion. ASIC brings the motion under Federal Rule of Civil Procedure 60(b), but that rule only provides grounds for relief from a "[f]inal judgment, order, or proceeding." Fed. R. Civ. P. 60(b). ASIC's

---

[1] The Magistrate Judge's findings and recommendations in *Thomas* were reviewed *de novo* by the district court, which determined, among other things, that the Magistrate Judge correctly construed the term "abandoned" in the insurance policy. *Thomas v. Nautilus Ins. Co.*, No. CV 11-40-M-DWM-JCL, 2011 WL 4369496, at *1 (D. Mont. Sept. 19, 2011).

ORDER- 5

motion concerns a non-final order that adjudicates fewer than all the claims against fewer than all the parties. (*See* 9/5/12 Order.) Thus, Rule 60 does not apply. Instead, Federal Rule of Civil Procedure 54(b) applies, which governs non-final judgments including "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties." Fed. R. Civ. P. 54(b).

Under Rule 54(b), the court has wide latitude to revise prior orders—much wider than under Rule 60. Under Rule 54(b), a non-final order "may be revised at any time before the entry of a judgment . . . ." Fed. R. Civ. P. 54(b). This standard is not as stringent as the standard that would apply under Rule 60. Under Rule 60, there is a fairly robust jurisprudence establishing various inquiries courts must undertake when a party moves to vacate a prior judgment following a settlement. *See, e.g.*, *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18 (1994); *Stolz v. Am. Int'l Life Assurance Co. of N.Y.*, 922 F. Supp. 435 (W.D. Wash. 1996). For example, in the Ninth Circuit, a district court may vacate a judgment following settlement upon consideration of "the consequences and attendant hardships of dismissal or refusal to dismiss and the competing values of finality of judgment and right to re-litigation of unreviewed disputes." *Am. Games, Inc. v. Trade Prods., Inc.*, 142 F.3d 1164, 1168 (9th Cir. 1998) (quotation marks omitted). No such inquiry is required under Rule 54(b). Under Rule 54(b), district courts have "complete power" over non-final orders and may vacate or revise them "at any time," if doing so would be "consonant with equity." *United States Gypsum Co. v. Pac. Award Metals, Inc.*, No. C 04-04941 JSW, 2006 WL 1825705, at *1

(N.D. Cal. July 3, 2006); *De la O v. Arnold-Williams*, No. CV-04-0192-EFS, 2008 WL 4192033, at *1 (E.D. Wash. Aug. 27, 2008) (quotation marks omitted).

Courts exercising Rule 54(b) power in the settlement context have found that vacating a non-final order is "consonant with equity" if there are no reasons suggesting the order should not be vacated. For example, in *United States Gypsum*, a district court in the Northern District of California vacated several orders under Rule 54(b), including a summary judgment order and a claims construction order, to facilitate settlement. *United States Gypsum*, 2006 WL 1825705, at *1. The court in that case required only that the agreement to vacate "was a significant factor in successfully resolving this litigation," and that there were "no considerations that would justify denial of the motion." *Id.* Likewise, in *De la O*, the court considered factors such as (1) whether all parties have agreed to vacate the order as a condition of the proposed settlement; (2) whether a former party to the action would be adversely affected by vacating the order; and (3) whether the costs of continuing the action with uncertain results are outweighed by the benefits of the proposed settlement. *De la O*, 2008 WL 4192033, at *1.

In this case, none of these considerations suggest denying the motion to vacate. First, it is clear that allowing this motion was a factor in successfully resolving the litigation. (Mot. at 2-3; Andersen Decl. ¶ 3.) This suggests to the court that it should not simply deny the motion out of hand given that a settlement conserves judicial resources and allows the court to focus its attention on other cases. Second, all parties have, to some extent, agreed to vacate the order: specifically, MidMountain agreed not to oppose the motion. (Andersen Decl. ¶ 3.) Third, there is no suggestion that any former party to

ORDER- 7

the case would be adversely affected by vacating the order; all other claims and parties in this case have either settled or been dismissed. (*See* Dkt. ## 161, 166.)[2] There are no other reasons, either in the record, in ASIC's briefing, or that the court can discern, that suggest it would be harmful or inequitable in any way to grant this motion.

Accordingly, the court follows the approach taken by the courts in *United States Gypsum* and *De la O* and GRANTS the motion because "no considerations justify denial of the motion." 2006 WL 1825705, at *1. Although there are no equitable considerations that strongly compel granting the motion, doing so is "consonant with equity" as required by *De la O*, 2008 WL 4192033, at *1. The court will not diverge from the approach taken by these courts absent some valid reason to do so or some precedent suggesting a different approach is warranted.

## III. CONCLUSION

For the foregoing reasons, the court GRANTS MidMountain's motion to strike (Dkt. # 163) and STRIKES the above-quoted portion of the court's prior order.

Dated this 1st day of October, 2013.

JAMES L. ROBART
United States District Judge

---

[2] The court declines to rely on the third consideration articulated in *De la O*: whether the costs of continuing the action with uncertain results are outweighed by the benefits of the proposed settlement. *De la O*, 2008 WL 4192033, at *1. The court is not privy to the parties' settlement agreement and does not know its benefits like in *De la O*. Further, it is not clear that the settlement will not be consummated if the court denies this motion. (*See* Mot.) Thus, this consideration has no relevance in this case.

ORDER- 8